THE STATE v. ARCHER.

1. **Manslaughter:** KILLING CONCEDED: INSTRUCTION. In a trial for manslaughter, although the defendant pleaded not guilty, yet where all the witnesses, including the defendant himself, testified to the killing by defendant, and the whole record showed that there was no dispute as to that fact, *held* that it was no error for the court to instruct the jury that the killing was conceded.

2. **Evidence:** PRACTICE: REFUSAL OF WITNESS TO ANSWER ON CROSS-EXAMINATION. Where a witness on cross-examination refused to answer questions propounded for the purpose of laying a foundation for his impeachment, the cross-examining party had no right to have the testimony of the witness stricken out, but it was properly submitted to the jury, to be considered in connection with the demeanor of the witness. The right of the cross-examining party was either to insist that the court require the witness to answer, or else to proceed to offer the impeaching testimony to which he had called the witness' attention.

3. ———: ———: GENERAL MORAL CHARACTER OF WITNESS. Evidence of the general good moral character and reputation for truth and veracity of a witness is admissible only when his character and reputation

have been directly assailed, and not upon evidence merely of contradictory statements made by the witness. (See opinion for authorities *pro* and *con.*)

*Appeal from Appanoose District Court*—HON. C. D. LEGGETT, Judge.

TUESDAY, DECEMBER 6.

THE defendant was convicted of the crime of manslaughter in the killing of one George Woods. He was sentenced to imprisonment in the penitentiary for the period of four years, and he appeals.

*Tannehill & Fee*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

ROTHROCK, J.—I. The indictment charged the defendant with the crime of murder in the first degree. A former trial of the case resulted in a conviction for manslaughter. An appeal was taken to this court, and the judgment was reversed for what was regarded as error in the instructions given by the court to the jury upon the law of self-defense as applicable to the evidence in the case. (See 69 Iowa, 420.) A like verdict and judgment resulted on the second trial. The defendant claims that numerous errors of law occurred upon the last trial, which alleged errors we will proceed to consider. It is not denied that the defendant took the life of George Woods by shooting him with a shot-gun. We say this fact is not denied. It is true, the defendant pleaded not guilty, and it was necessary for the state to prove the homicide as charged. But the tragedy took place in the presence of several witnesses, and the defendant was a witness in his own behalf, and all concurred in the statement that the defendant killed Woods. The court instructed the jury that the killing was conceded. Counsel for the defendant claim that this instruction was erroneous. We think otherwise. The whole record shows that there was

*Marginal note: 1. MANSLAUGHTER: killing conceded: instruction.*

no contest nor dispute as to the fact of the killing, and it is always proper for the court to instruct the jury as to the effect of every fact about which there is no controversy.

II.   The facts attending the killing were quite fully set forth on the former appeal.   It is unnecessary to repeat them here.   It is enough to say that two daughters of the deceased were eye-witnesses of the homicide. One of these daughters was at that time about eleven years of age.   The last trial occurred in January, 1887, at which time she stated that she was thirteen years old.   In her examination in chief she stated that she saw the defendant shoot her father.   She detailed the acts of her father and the defendant immediately preceding the fatal shot.   She did not detail any of the facts which led to the altercation between the parties.   The fact is, however, as will be seen by an examination of the former opinion of this court in this case, that the killing arose out of an attempt by the defendant to go through an inclosed pasture belonging to the deceased.   On the cross-examination of the witness, she stated that her sister told Archer, the defendant, to stay out of the pasture.   Counsel then propounded several questions to the witness, by which it was sought to be shown that she had testified on the former trial that her sister did not forbid the defendant from going into the pasture, and that witness did not know where her sister was when the defendant entered the pasture.   The witness gave no answer to these questions, and it is stated in the abstract that the witness refused to answer some thirty-four other questions propounded to her in relation to her testimony on the former trial, said questions being for the purpose of laying the foundation to impeach her.   Thereupon, counsel for the defendant moved the court to strike out the testimony of the witness, because she refused to answer these questions upon cross-examination.   The motion was overruled, and complaint is made of this ruling.   The witness had stated that her sister did order the defendant not to go into the pasture.

2. EVIDENCE: practice: refusal of witness to answer on cross-examination.

The object of the cross-examination was to give the witness an opportunity to admit and explain, or deny, any contradictory statement she may have made in her testimony on the former trial. The rule is for the benefit of the witness. The witness had the opportunity given to explain, and, having refused or declined to do so, the court was not authorized or required to withdraw her testimony from the jury. It would probably have been the right of the defendant, having called the attention of the witness to her former testimony, to prove the contradictory statements. He either should have made this offer, or, instead of moving to exclude the testimony, he should have insisted that the court require the witness to answer the questions. Besides, the court instructed the jury that the demeanor and conduct of this witness on the stand was proper to be considered by them. We think the court did not err in refusing to withdraw the testimony of the witness from the jury.

III. A number of objections are made to the rulings of the court upon the admission and exclusion of evidence—such as that certain evidence was not properly rebutting evidence, that other evidence was not competent, and that the court refused to allow the defendant to re-examine a witness for the state with a view to laying the foundation for impeachment. We have carefully examined all these rulings, and our conclusion is that none of them are erroneous. They were either a proper exercise of the discretion of the court, or the admission of proper or the exclusion of improper evidence.

IV. The wife of the defendant was a witness for him, and he was a witness in his own behalf. The state, after laying the proper foundation, introduced evidence tending to prove that said witnesses had made previous statements of fact contradictory to those detailed by them as witnesses. The defendant, for the purpose of sustaining the testimony of said witnesses, offered to prove that their general moral character, and their

3. ——: ——: general moral character of witness.

general reputation for truth, was good in the neighborhood
where they lived.  The court, on the objection of the state,
excluded the evidence, and the ruling is complained of as
erroneous.  We believe the practice in this state has been to
limit such testimony to cases where the general character or
reputation of the witness has been attacked by the party
against whom he testifies.  Whether such evidence is allow-
able where it is claimed the witness has made contradictory
statements, has never been directly determined by this court.
There appears to be a conflict of authority upon the question.
In 1 Greenl. Ev., § 469, the rule is thus stated:  "Where
evidence of contradictory statements by a witness, or of other
particular facts, is offered by way of impeaching his veracity,
his general character for truth being thus in some sort put in
issue, it has been deemed reasonable to admit general evi-
dence that he is a man of strict integrity and scrupulous
regard for the truth."  The learned author cites Phillips on
Evidence, 944, and *Rex v. Clarke*, 2 Starkie, 241.  This was
followed in *Harris v. State*, 30 Ind., 131, and other cases in
that state, and in *Paine v. Tilden*, 20 Vt., 554, and in other
states.  On the other hand, the cases of *Russell v. Coffin*,
8 Pick., 143; *Brown v. Mooers*, 6 Gray 451; *Stamper v.
Griffin*, 12 Ga., 450; and *Wertz v. May*, 21 Pa. St., 274, hold
that such evidence is not admissible.  The case of *Rex v.
Clarke*, to which reference is made in the above quotation
from Greenl. Ev., does not determine the question.  It is
said in *Brown v. Mooers, supra*, that "the statement in 1
Greenl., Ev., § 469, is not sustained by the cases the author
cites, and is not law."  It seems to us that the rule allowing
general evidence of the good character and reputation of a
witness, where his general reputation has not been attacked,
ought not to be adopted.  As is said in *Russell v. Coffin,
supra:* "If this were the practice, great delay and con-
fusion would arise, and, as almost all cases are tried on con-
troverted evidence, each witness must bring his compurgators
to support him when he is contradicted, and indeed it would

be a trial of witnesses and not of the action." The ruling of the court in excluding the evidence was not erroneous.

V. Exceptions were taken to some of the instructions given by the court to the jury, and to the refusal to give certain instructions requested by defendant. We have carefully examined these alleged errors, and we deem it sufficient to say, without elaboration, that we discover no reason for holding that there was any error in the charge of the court, nor in the ruling made upon the defendant's instructions. Our conclusion is that the judgment of the district court must be

AFFIRMED.