OF

## THE STATE OF IOWA

AT

### DES MOINES, MAY TERM, A. D. 1899,

AND IN THE FIFTY-THIRD YEAR OF THE STATE.

---

### STATE OF IOWA v. CLAY OWENS, Appellant.

**Impeachment of Witness.** It is error to permit the state, over the objection of defendant, to introduce witnesses as to the general reputation for truth and veracity of a witness for the state who is not a stranger, when the witness' character in no respect suffers from his answers on cross-examination, though the questions reflect on his character, and when no witness has been called by the defendant to attack his general moral character, nor his general reputation for truth and veracity.

**SAME.** A showing that a witness has made statements in contradiction to his testimony does not afford a foundation for introducing evidence sustaining his reputation.

**SAME:** *Prejudicial error.* Error in admitting evidence as to the good character of a witness for the state is prejudicial, where his testimony is relied on for conviction, and the evidence as to his character tended to give his testimony undue weight.

*The figures on the left of the syllabi refer to corresponding figures on the margin of the case at the place where the point of the syllabi is decided.

*Appeal from Davis District Court.*—HON. M. A. ROBERTS, Judge.

WEDNESDAY, MAY 26, 1899.

THE defendant, Clay Owens, was jointly indicted with Ed Noble for the larceny of certain cattle in Davis county, the property of David E. Davies, and on separate trial was found guilty, and a judgment of imprisonment in the penitentiary for a term of four years rendered against him, from which judgment he appeals.—*Reversed.*

*H. C. Taylor* and *I. T. Dabney* for appellant.

*Milton Remley,* Attorney General, *Dillon H. Payne,* County Attorney, and *Jesse A. Miller* for the State.

WATERMAN, J.—I.   On the trial had in Davis county, one J. H. Springer, a resident near Ottumwa, in Wapello county, was examined on behalf of the state, and cross-examined at length on behalf of the defendant. The testimony of this witness is material to the prosecution, and the cross-examination was pressed with much vigor, and evidently with a desire to break the force of his testimony. No witness was called by the defendant to attack his general moral character, nor his general reputation for truth and veracity, yet the state was permitted, over defendant's objection, to call six witnesses as to the general reputation of the witness Springer for truth and veracity, who testified that it was good; and of this the defendant complains. It is claimed by the state that, when the party against whom the witness testifies attacks the character of such witness on cross-examination by insinuations contained in the questions asked, the witness may be supported by general evidence of good character. In other words, it is said that, if the questions asked on cross-examination were of

such a nature as to reflect upon the character of the witness, this is sufficient impeachment to afford a basis for sustaining the character of the witness by independent evidence. Springer had purchased the cattle from the defendant under somewhat peculiar circumstances.   On cross-examination he was asked a number of questions that indicated quite strongly a suspicion on the part of the counsel cross-examining that the witness might have been implicated in the crime.   Some of these questions do not seem to have been answered.   Where there was a response, it was favorable to the witness.   In no respect did the witness' character suffer from his answers. Under these circumstances, we think it was error to permit witnesses to be called and examined in support of Springer's character.   There are some authorities that tend to sustain the contention of the state.   See *State v. Cherry,* 63 N. C. 493; *Railway Co. v. Raney,* 363 Tex. Civ. App. 8 (23 S. W. Rep. 340).   Some reliance is also placed by the state upon *Merriam v. Railroad Co.,* 20 Conn. 354, but that court seems to have adopted the somewhat singular rule that, if the witness is a stranger, his character may be supported by independent evidence, though he has not in any manner been impeached.   This doctrine, which was given a *quasi* indorsement in the *Texas Case* cited, had some influence in inducing that decision.   So, also, did the fact that the witness was shown to have made contradictory statements.   In this state, to show that a witness has made statements in contradiction of his testimony does not afford a foundation for introducing evidence to sustain his reputation.   *State v. Archer,* 73 Iowa, 320. We may say further in this connection that the witness in the case at bar was not a stranger.   He was well acquainted in the county where the action was tried.   The rule supported by the weight of authority is that the reflections upon the character of the witness in a cross-examination must be found in his answers, in order to warrant the introduction of evidence in support of his

reputation. Inferences to be drawn from questions asked are not enough. *Russell v. Coffin,* 8 Pick, 143; *People v. Gay,* 7 N. Y. 378; *People v. Hulse,* 3 Hill, 309; *Lewis v. State,* 35 Ala. 380; *Rex v. Clark,* 2 Starkie, 241; Starkie, Evidence (9th ed.) 252. See, also, as opposed to the doctrine contended for by the state, *Matthews v. Huntley,* 9 N. H. 146; *Boadman v. Woodman,* 47 N. H. 120; *Wartz v. May,* 21 Pa. St. 274.

II. It may be said that the error in admitting this testimony was without prejudice. But this we think is not so. Springer was the principal witness for the state. His testimony was relied upon for a conviction. This kind of evidence tended to give his testimony undue weight. To hold the admission of the testimony to be without prejudice would be to sanction the admission of such evidence in any case where the trial court saw fit to receive it. In an amended abstract the state sets out the cross-examination of one Noble, who was asked as to certain statements he had made in relation to Springer's connection with the transaction complained of. This is given, as we suppose, on the theory that it tended to impeach Springer. But to this we cannot assent. The declarations of Noble were asked for to contradict his direct evidence,—to weaken the credibility of his story,—and in his answers he negatives every suggestion in relation to Springer.

Some other questions, not likely to again arise, are discussed by counsel, but they may properly be passed by us. For the error mentioned the judgment of the district court is REVERSED.