LOUISVILLE & N. R. CO. v. McCLISH.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

No. 975.

1. WITNESSES—PROOF OF GENERAL GOOD REPUTATION—WHEN ADMISSIBLE.
    The fact that the testimony of a witness is contradicted by that of other witnesses, even in such manner that the conflict is irreconcilable, and cannot be explained consistently with the truthfulness of both sides, does not authorize the introduction of evidence to show his general good reputation for truth and veracity, which is only permissible where a direct attack has been made on the general character of a witness for truth by some recognized method of impeachment, as distinguished from an attack upon his testimony in the particular case.

2. RAILROADS—KILLING OF PERSON WALKING ON TRACK—CONTRIBUTORY NEGLIGENCE.
    The question of the contributory negligence of a person killed by a train while walking on a railroad track is not affected by a universal or general custom of people to use such tracks for footways, nor by the question whether the deceased knew that trains were due at the time; but where no question of license or public crossing is involved, and the deceased was a mere trespasser, walking upon an embankment eight feet high, the railroad company, in an action for his death, is entitled to an instruction that he was guilty of contributory negligence as a matter of law.

3. APPEAL—REVIEW—LIMITATION BY EXCEPTION.
    A question arising on the charge of the trial court, presented for review by an appellate court, is limited by the exception taken in the court below, and cannot be broadened by the assignment of errors or by the brief of counsel.

4. TRIAL—INSTRUCTIONS—MATTERS AFFECTING CREDIBILITY OF WITNESS.
    Where those in charge of the engine of a railroad train which it was alleged struck and killed plaintiff's intestate were witnesses and testified as to the occurrence, which was in a state in which a statute made it their duty to keep a lookout, and to give warning signals, and, if possible, stop the train on discovering a person on the track, and made the omission of such precautions a criminal offense in case such omission resulted in the death of a person, for the purpose of showing the interest of the witnesses, to be considered by the jury in weighing their testimony, it is not error to call attention to such criminal liability, where the testimony in the particular case warrants it.

5. EVIDENCE—INFERENTIAL PROOF—HABITS OF DECEASED.
    In an action against a railroad company to recover for the death of a person alleged to have been struck and killed by a train, where there

was no eyewitness to the accident, it is not competent for defendant to show a habit of deceased to jump on moving trains near the place where his body was found, for the purpose of raising an inference that his death resulted from such an attempt, but the testimony should be confined to his acts on the particular occasion in issue capable of being directly or circumstantially proved.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Charles N. Burch, for plaintiff in error.

Wm. Kinney and H. J. Livingston, for defendant in error.

Before LURTON and DAY, Circuit Judges, and WANTY, District Judge.

DAY, Circuit Judge. This action was brought to recover damages sustained by the wrongful death of George McClish, it being alleged that he was negligently run over by one of the trains of the defendant company. The testimony tended to show that on the afternoon of February 4, 1899, the deceased left Brownsville in the direction of his home, and later in the afternoon his body was found about one mile north of Brownsville, at the foot of an embankment, near the railroad track. The injuries on his person were of such a character as to cause death. It is the claim of the plaintiff that he was knocked from the track and killed by one of the locomotives of a passing train, while the company contended that death ensued from the wrongful attempt of the deceased to board one of the trains of the company. It is strenuously argued that the case should not have been submitted to the jury, but should have been arrested by an instruction to find for the company at the conclusion of the testimony. It would serve no useful purpose to summarize our views of the evidence, which we have carefully considered. It is only necessary to say that we have reached the conclusion that under the Tennessee statute a case was made upon the testimony sufficient to warrant its submission to the jury. We proceed to consider several of the assignments of error.

1. The witness Henry Wright, called by the plaintiff, gave testimony tending to show that he was at work on a telephone pole some distance south of the place of the injury; that he saw McClish, with whom he was well acquainted, pass up along the track northwardly shortly before the passenger train went in the same direction. Further, that shortly after the passenger train passed he saw parties bringing the body of McClish from the scene of the injury. The company offered the testimony of three witnesses, tending, with more or less certainty, to show that Wright was not at this pole that day, but was at a certain opera house until the body was brought into town. Over the objection of the defendant company the plaintiff was permitted to introduce the testimony of witnesses to establish the general good character of the witness Wright for truth and veracity. The question of the admissibility of this kind of testimony has led to no little contrariety of decision in the courts of this country. The practice is not regulated by any statute of Tennessee, so far as we are advised, and is a question of general law, not controlled by state decisions. Garrett v. Railroad Co., 41 C. C. A. 237, 101 Fed. 102, 49 L. R. A. 645. The

question was presented to this court under facts differing from those now before us in Spurr v. U. S., 31 C. C. A. 202, 87 Fed. 713. In that case it was sought to sustain the admission of this class of testimony upon the ground that the cross-examination had impeached the defendant's character for truth and veracity. Of this claim the court, speaking by Judge Swan, said:

"A careful reading of defendant's cross-examination fails to disclose any ground for the admission of evidence of his general reputation for truth and veracity. The fact that contradictions exist between his testimony and that of other witnesses affords no ground for its admission. 1 Greenl. Ev. § 469. In his character as a witness defendant is not entitled to any privilege not extended to other witnesses. Reagan v. U. S., 157 U. S. 301–305, 15 Sup. Ct. 610, 39 L. Ed. 709; U. S. v. Hollis (D. C.) 43 Fed. 248. In general, where no attempt has been made to impeach him by evidence of bad character, or by contradictory statements, or by the cross-examination, he cannot corroborate his testimony, or give it weight by evidence of his general reputation for truthfulness; nor will his own view of the effect of his cross-examination make such testimony competent. The rule as to the admissibility of testimony of character is thus broadly stated by Greenleaf (1 Greenl. Ev. § 54): 'And in all cases where evidence is admitted touching the general character of the party, it ought manifestly to bear reference to the nature of the charge against him.' The evidence was obviously intended to give weight to the defendant's personal testimony; not for the purpose of establishing a general character inconsistent with the offense charged. The weight of reasoning and authority justified its exclusion. Stevenson v. Gunning's Estate, 64 Vt. 609, 25 Atl. 697; Fundorburg v. State, 100 Ala. 36, 37, 14 South. 877; Tedens v. Schumers, 112 Ill. 263, 267; People v. Cowgill, 93 Cal. 597, 29 Pac. 228."

In the present case we perceive in the character of Wright's cross-examination nothing which tends to impeach his general character for truth. It is true it is searching and exhaustive, but it relates entirely to details of his alleged conduct and observation of McClish to which he had testified in chief, and we think the doctrine of the Spurr Case entirely applicable to the case in hand so far as that feature is concerned.

Did the contradiction of Wright by the witnesses who claim that he was not where he says he was, and consequently could not have seen what he attempted to describe, put in issue the general character of the witness for truth, and thereby justify the introduction of witnesses to sustain it? Greenleaf, who goes farther upon this subject than many of the authorities are willing to follow in admitting this class of testimony, supports the doctrine that the contradiction of a witness by other testimony does not lay the foundation for the introduction of other testimony supporting his general reputation for truth. Greenl. Ev. § 469, and notes. What more is there in this case than the contradiction of Wright by other testimony? It is true that the contradiction is of that character that admits of no reconciliation of the testimony upon any theory of honest mistake or failure of memory. This is often true of witnesses whose general character for truth is unassailable. If, in every case where the witnesses are in direct and irreconcilable conflict, general character proof can be introduced, the disputed issues of fact will be lost sight of in a mass of testimony sustaining or impeaching the various witnesses in the case. The present case affords a striking illustration of the effect of the introduction of this

class of testimony, for we find no less than six other witnesses at the trial whom it was deemed necessary to sustain by proof of general reputation. If this practice is to be followed, as is said in Russell v. Coffin, 8 Pick. 142, "great delay and confusion would rise; and, as almost all cases are tried upon controverted testimony, each witness must bring his compurgators to support him when he is contradicted, and, indeed, it would be a trial of the witnesses, and not of the action." An attentive consideration of the cases and of the reasons upon which they are founded leads us to the conclusion that the introduction of this class of testimony should be confined to cases where an attack has been made upon the character of the witness by some method which tends to impeach his general character for truth. It is true that contradicting testimony may have an effect indirectly to impeach in the mind of the trior the character of the witness contradicted, but that is not the purpose of the testimony. It does not matter how much a witness may be contradicted, his general character is presumed good until it is assailed by some recognized method of impeachment. This may be undertaken by showing that the general reputation of the witness for truth is bad, by showing by direct proof or upon cross-examination that he has been convicted of an infamous crime. In these instances the attack is made upon his character, and is not so much upon his testimony in the particular case as upon his unreliability as a witness. When his character is thus assailed, the attack may be repelled by proof of general good reputation for truth. Until it is impeached it is not in issue, and we think the ends of justice will be subserved by confining the testimony to the issues of fact essential to the determination of the controversy before the court. While, as we have said, the cases are by no means uniform upon this subject, the conclusion reached is sustained by many well considered cases; among others; Wertz v. May, 21 Pa. 274; Brann v. Campbell, 86 Ind. 516; State v. Ward, 49 Conn. 429; Webb v. State, 29 Ohio St. 351; State v. Archer, 73 Iowa, 320, 35 N. W. 241; Russell v. Coffin, 8 Pick. 142; Brown v. Mooers, 6 Gray, 451; Gertz v. Railroad, 137 Mass. 77, 50 Am. Rep. 285; Stevenson v. Gunning's Estate, 64 Vt. 609, 25 Atl. 697; People v. Gay, 7 N. Y. 378; Tedens v. Schumers, 112 Ill. 263.

Whether the introduction of proof tending to show that the witness has made statements out of court inconsistent with his testimony is such an attack upon his character as justifies the introduction of sustaining testimony of general reputation is not a question involved in the record now before us. The cases are much in conflict upon the question, as a perusal of them will show. We cannot say that the admission of this sustaining testimony was harmless error. It tended to give undue weight and influence to the testimony of Wright over witnesses who rested upon the presumption of the law as to good character. Brann v. Campbell, 86 Ind. 516.

2. Under the decisions of the supreme court of Tennessee construing the statute under which this action was prosecuted, while the contributory negligence of the person killed will not bar a recovery, it may be taken into consideration in mitigation of damages. Upon this branch of the case the court instructed the jury:

"Take this case. I think you will agree with me in saying that it is always negligence, under any circumstances, for any man to walk along the track within the lines of contact by moving trains, unless it be under exceptional circumstances, where a man has scarcely any other choice of a pathway. Ordinary prudence would suggest that every man should keep off the railroad tracks unless he is compelled to use them for a walkway. But you know, as a matter of practical experience, that in a vast country like this it is impossible for the railroad company to keep the people from using their railroad tracks as a walkway. You know that people will take the railroad track because it is always a better road, higher and drier, and better kept than common roads and pathways that run parallel to them. This almost universal habit of using the railroad tracks as a walkway is to be considered by the jury in determining how far the intestate is to be chargeable with negligence in mitigating the damages; and this without regard to circumstances whether or not the railroad company has permitted it. If the railroad company has taken steps to exclude the public from using its tracks as a walkway, and, notwithstanding, the intestate violates the safeguards of the railroad by disregarding the means to prevent it, there the jury would naturally charge the intestate more readily with negligence. But if the company has taken no distinct means of warning off such intruders, that circumstance is to be considered by the jury in estimating the sum to be allowed in mitigation of damages. Again, if the intestate is not only walking upon the track, but he uses it for a walkway at a time and at a place when he knows or ought to know that trains are due to pass that way, that he is liable to come in contact with them, such a condition or circumstance would require the jury to increase the sum allowed in mitigation of damages. Thus, as before, the jury takes into consideration the facts and circumstances of this particular occasion and this particular man, and fairly and impartially estimates how much the damages should be mitigated by a reduction on account of the particular negligence shown by him on that occasion. Also, if the jury can see from facts and circumstances that after he had taken the track to use as a walkway he used it negligently by going heedlessly along without attention to the danger he is in from trains that are likely to pass or repass along the track at that time, such a circumstance would incline the jury to increase the amount to be allowed in mitigation of damages. And so it is, gentlemen of the jury, all the facts and circumstances of this case are submitted to you for your consideration to determine how much it would be fair to reduce the damages by reason of any negligence you find on the part of the plaintiff's intestate on this particular occasion."

Exception was duly taken to that part of the charge permitting the universal custom of people to walk upon railroad tracks to be considered as lessening the contributory negligence of the deceased.

The seventeenth request of the defendant was as follows:

"If you find from the evidence that plaintiff's intestate was killed by being struck by one of defendant's trains, then you must mitigate and reduce the damages which you allow plaintiff by taking into consideration the negligence of plaintiff's intestate in being upon defendant's track. I charge you that it was gross negligence on the part of plaintiff's intestate to go upon a railroad embankment eight feet high, where trains were frequently passing, and this negligence must be taken into consideration in assessing damages. The damages should be mitigated, and reduced to such amount as you deem proper. You can reduce the damages to a merely nominal amount."

Instead of giving request as asked, the court charged the jury as follows:

"If you find from the evidence that plaintiff's intestate was killed by being struck by one of defendant's trains, then you must mitigate and reduce the damages which you allow plaintiff by taking into consideration any negligence of plaintiff's intestate in being on defendant's tracks. I charge you that if you believe from the evidence that the plaintiff's intestate

walked upon a railroad embankment eight feet high, where trains were frequently passing, and at a time when he knew that trains were due, if you find that he did not know the schedule trains, this negligence would and must be taken into consideration in assessing damages. The damages should be mitigated and reduced to such amount as you deem proper; and you may even reduce the damages to a merely nominal amount, if you think his negligence demands this as a matter of fairness and justice to the defendant. You must allow whatever mitigation you think just for any negligence on his part."

The objectionable feature of the charge given lies in the instruction that the jury might consider the almost universal habit of using the railroad tracks as a walkway in determining the question of the contributory negligence of the deceased. There is no testimony in the record showing a universal custom to thus use the right of way of a railroad for a footpath, and we do not perceive that a practice of this sort would make it any the less negligent. In such cases it has been frequently held that such use, where no question of license or public crossing is involved, is at the risk of those who see fit to thus expose themselves without cause. Even in the case of a licensee there is, under such circumstances, the highest duty to exercise the utmost degree of vigilance in looking out for approaching engines or cars. Railroad Co. v. Cook, 13 C. C. A. 364, 66 Fed. 115, 28 L. R. A. 181. In the absence of a license, the deceased, under the circumstances of this case, was a trespasser, to whom the company owed no duty except to avoid, after discovering his danger, any wanton or unnecessary injury to him. Railroad Co. v. Cook, supra. We think the defendant was entitled to a charge that the deceased was guilty of contributory negligence in thus exposing himself to danger by walking upon the track, and this without the qualification contained in the modification of the request in his behalf, "that, if the jury believed that the plaintiff's intestate walked upon a railroad embankment eight feet high, where trains were frequently passing, and at a time when he knew that trains were due, if you find that he did not know the scheduled trains, this negligence would and must be taken into consideration in assessing damages." This charge, by itself considered, might well justify the jury in believing that it was only negligence to make this use of the track when the deceased might expect trains to be due. We cannot agree to this proposition. The track is the property of the railroad company, which it has the legal right to use at any and all times. "It can never be presumed that cars are not approaching upon a track, or that there is no danger therefrom." Elliott v. Railroad Co., 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068. It is true that in other parts of the charge the learned judge instructs the jury that to make use of the track of a railway for walking purposes except in cases of necessity may be contributory negligence, but in the respects pointed out the jury may well have understood the court otherwise, and, in our opinion, the charge was misleading.

3. As to the weight to be given to the testimony of the engineer and fireman, who were important witnesses in behalf of the defendant, the court charged:

"Counsel for the plaintiff have properly called your attention to the fact that we have a statute making it a felony for a fireman or an engineer on

a railroad train not to observe the regulations of the statute, which has just been called to your attention. In other words, if either of these engineers or firemen saw McClish as an obstruction on the road, and did not blow the whistle, and do all that was necessary to stop the train, or if they failed to see him, they are guilty of a felony, and would be punishable under the statute for that crime. It is plain, therefore, that these witnesses were testifying in their own interest in respect to that criminal liability. It is also to be observed that they are in the employment of a railroad company, and have such bias in that regard as belongs to ordinary human nature. But I have told you, even in criminal cases, that if the jury can see that the witness, notwithstanding the gravity of his interest, is telling the truth, that they not only may, but should, believe him, and base their verdict accordingly."

It is argued by counsel for plaintiff in error that this charge was erroneous. It is claimed that a proper interpretation of the Tennessee statute only requires the person in charge of the locomotive to be on the lookout ahead for obstructions; that in this case the engine was in charge of the engineer, and it was his duty to give the signals and take the precautions prescribed by the statute. Furthermore, that neither the engineer nor the fireman could be held criminally responsible under the laws of Tennessee unless the omission to take the statutory precautions resulted in the death of McClish. These questions raise important issues under the Tennessee Code, which do not seem to have been passed upon by the supreme court of that state. The exception taken, however, does not raise the question argued. It is as follows:

"(4) To that portion of the court's charge which calls the jury's attention to the statute making it a felony for an engineer or fireman to disregard the statutory precautions. Defendant excepts to said statute being referred to at all in the court's charge, and further excepts because, if referred to at all, the court should have stated that the omission to observe these precautions must have been willful, in order to make the lookout guilty of felony."

It is true that the assignment of errors is broader than the exception, and equally true that the argument is broader than the exception and the assignment. It has been frequently held that it is not the office of an assignment of error to extend the exception originally taken. It is the purpose of the rules of this court 10, 11, and 12 (31 C. C. A. cxlv, cxlvi, clii, 90 Fed. cxlv, cxlvi, clii), to require an exception to be specific, that attention may be called to the grounds thereof, and the error, if any, corrected. Van Gunden v. Iron Co., 3 C. C. A. 294, 52 Fed. 838. It is not permitted to look beyond the terms of the assignment of error to the brief for a specific statement of the question to be raised. Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 12 C. C. A. 350, 63 Fed. 891. Looking, then, to the specific exception taken, we find it objected: First, that the court referred to the statute at all; second, the court should have stated the omission to observe the statutory precautions must have been willful in order to make the defendant guilty of felony. As to the first objection we see no reason why the court may not properly refer to a statute making the omission of a duty the subject of criminal as well as civil liability, where the witness is one who may be held criminally liable under the circumstances involved in the inquiry in the civil suit. That fact

may influence his testimony, and, like other facts showing feeling or interest, may properly be considered by the jury under proper instructions. To justify reference to the criminal liability imposed by this statute, there must be testimony tending to show an omission to perform a duty required by the statute of the witness which may subject him to punishment. It is to be borne in mind, in this connection, that under the Tennessee statute there may be a liability in damages for failure to give the signals, while no conviction for crime can be had unless the omission causes death. The second part of the exception relates to the requirement that the omission must have been willful to involve criminal responsibility. The section of the Tennessee Code fixing criminal liability, so far as it relates to the circumstances shown in the present case, is as follows:

"If any engine driver or other person connected with the running of the locomotive or train upon any railroad shall omit to observe the precautions prescribed for the prevention of accidents, whereby an accident shall occur, and any person shall be killed, he shall be guilty of a felony."

This statute evidently does not make the crime dependent upon any particular element of purpose or intent upon the part of those who come within its terms. It is the omission on the part of such persons to observe the statutory requirements, which results in accident causing death, that renders them criminally responsible. We do not know what the court would have held had the exception directed attention to the applicability of this statute alone to the engineer under the circumstances shown; nor did the exception challenge the court's attention to the necessity of pointing out the fact that death must result from the omission to act before the witness could be indicted and convicted of a criminal offense.

4. Another proposition is much discussed in the briefs, and was the subject of oral argument. It involves the right of the defendant company to introduce evidence tending to show that the deceased was in the habit of jumping on trains near the place where the body was found. In the form in which the offer of proof in this branch of the case was made it is quite likely that the question sought to be made was so involved with incompetent matter proposed to be proven at the same time that the alleged error in ruling upon it has not been properly brought into the record. As it has been thoroughly discussed, and may be an important question in a new trial of the case, we have concluded to give our views upon it. The learned counsel for plaintiff in error admit the general rule to be that testimony offered for the purpose of establishing contributory negligence of the deceased, like other testimony, must be limited to proving facts existing at the time of the happening of the injury complained of. It is contended, however, that when there is no eyewitness to the occurrence, and the manner of its happening is to be left to circumstantial evidence alone, it is competent to show the habit of the deceased in the respect of doing the thing which it is claimed he did at the time of receiving his injury. The argument is, proof of habit to do the thing in question renders it more likely that it was done at the time in controversy. There are not lacking authorities to support this view, but we think the better rule is that such testimony tends to raise

collateral issues, to beget uncertainty and false inferences from events which have no bearing upon the real issues. A man may be careful upon one occasion and careless upon another. It is not fair deduction to say that because the deceased sometimes boarded trains in motion that, therefore, he was attempting to board a train when killed. Such testimony, tending to show contributory negligence, could be met with other testimony tending to show that such was not his habit, and the attention of the jury would be diverted from what happened on the occasion of the injury to the consideration of the character and habits of the deceased at other times. We think the testimony should be confined to the conduct of the deceased in the particular instances under investigation in the light of the facts competent to be directly or circumstantially proved. While differing in its facts, we think the case of Thompson v. Bowie, 4 Wall. 463, 18 L. Ed. 423, is decisive in principle of the question now under consideration. In that case action was brought to recover upon three promissory notes. Bowie, the maker, sought to avoid payment on the ground that the notes were founded on a gaming consideration, and therefore void. There was no direct evidence offered at the trial to impeach the consideration of the notes, and circumstantial evidence only was relied upon. The trial court permitted a brother of the defendant to testify that whenever his brother was under the influence of liquor he had a propensity to gamble, and, as the maker was drunk on the morning the notes were given, and as they were in the handwriting of a professional gambler, payable to the keeper of a gambling house, the inference was that they were given for money won at play. Mr. Justice Davis, delivering the opinion, said:

"All evidence must have relevancy to the question in issue, and tend to prove it. If not a link in the chain of proof, it is not properly receivable. Could the habit of Thomas F. Bowie to gamble, when drunk, legally tend to prove that he did gamble on the day the notes were executed? The general character and habits of Bowie were not fit subjects of inquiry in this suit for any purpose. The rules of law do not require the plaintiff to be prepared with proof to meet such evidence. That Bowie gambled at other times, when in liquor, was surely no legal proof that because he was in liquor on the 1st day of January, 1857, he gambled with Steer. It is very rare that in civil suits the character of the party is admissible in evidence, and it is never permitted, unless the nature of the action involves or directly affects the general character of the party. 1 Greenl. Ev. § 54. Bowie was not charged with fraud, or with any action involving moral turpitude. He was simply endeavoring to show that his own negotiable paper was given for money lost at play; and to allow him, as tending to prove this, to give in evidence his habit to gamble when drunk, would overturn all the rules established for the investigation of truth."

In discussing the principle herein involved in Harriman v. Palace Car Co., 29 C. C. A. 194, 85 Fed. 353, Judge Thayer uses this language:

"When, therefore, a complaint does not charge incompetency, but simply alleges that an employé acted negligently on a given occasion, the proof should be confined to his acts on that occasion, and should not embrace an inquiry concerning his conduct on other occasions, or his general conduct, which is a subject in no wise involved in the issue."

To the same general effect are Jones, Ev. § 162, and cases cited; Eppendorf v. Brooklyn St. R. R. Co., 69 N. Y. 195, 25 Am. Rep. 171;

Franklin v. Franklin, 90 Tenn. 441, 16 S. W. 557. In the latter case it was held incompetent to cross-examine a witness accused of forging a will then in dispute by showing that he had forged other signatures. Judge Lurton, then of the supreme court of Tennessee, delivered the opinion; saying, among other things:

"The fact of a forgery of a particular paper cannot be shown by proof of other crimes of the same kind. If it had been shown that he had written this will, and the defense was that it had been written innocently, or by direction of the testator, then, to show guilty purpose or motive, it might have been admissible to show other offenses of the same kind. That was not the question here."

Chase v. Railroad Co., 77 Me. 62, 52 Am. Rep. 744, was a case where no one saw an accident at a crossing causing instant death. The court ruled that evidence of the general character and habits of the traveler for carelessness was not competent as bearing upon the question of due care upon his part. Upon the whole, while the question is not free from difficulty, we think the better rule excludes such testimony, and that there was no error in the action of the trial judge in the respect mentioned.

For the reasons heretofore set forth, the judgment will be reversed.