Thomas BLAKELY, Appellee,

v.

Mark L. BATES, General Leasing, and
Dannon Milk Products
Company, Appellants.

No. 85–1317.

Supreme Court of Iowa.

Oct. 15, 1986.

Steven K. Warbasse of White & Warbasse, P.C., Cedar Rapids, for appellants.

J. Nicholas Russo, R.N. Russo, Jerald W. Kinnamon, and Jon M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Iowa City, for appellee.

WOLLE, Justice.

Defendants Mark L. Bates, General Leasing (General), and Dannon Milk Products Company (Dannon) appeal from an adverse judgment in a personal injury case, contending that the trial court erroneously permitted the plaintiff Thomas Blakely on rebuttal to buttress his credibility with evidence of truthful character. Two rebuttal witnesses were allowed to testify concerning plaintiff's good reputation for truthfulness. Defendants contend that their timely two-pronged objection should have been sustained and the testimony excluded because (1) the plaintiff's character had not been attacked in such a manner as to permit rehabilitation pursuant to Iowa Rule of Evidence 608(a)(2), and (2) the testimony was beyond the scope of permissible rebuttal. We find no abuse of the trial court's discretion in permitting that testimony, and we therefore affirm.

The plaintiff commenced this personal injury action as a result of a 1984 collision between the car he was driving and a truck driven by Bates, owned by General, and

leased by Dannon. Defendants admitted liability, and throughout the trial the jury's attention was focused solely on damages. Evidence was presented concerning the nature, cause, and extent of the plaintiff's injuries, with the defendants vigorously contending that preexisting conditions, not the car-truck collision, were to a great extent the cause of the plaintiff's pain, disability, and other injury-related complaints. With the battle lines sharply drawn on the cause of plaintiff's difficulties, defendants used several methods during the trial to discredit plaintiff's damage claim.

Defendants' first salvo was fired during opening statements, when their counsel told the jury

> [t]hat Thomas L. Blakely, the plaintiff, was aware of the fact that Dannon Yogurt Corporation was a big corporation and that Blakely was going after the same and that when he went to Dr. Gelman, the doctor told him what Blakely didn't want to hear, and thereafter Blakely went to [his trial counsel] who steered him to Dr. Van Allen so that plaintiff would get a big verdict.

After plaintiff was examined as a witness on his own behalf, defendants' counsel undertook in several ways to impeach his testimony. It was undisputed that plaintiff before the car-truck collision had been hospitalized and received some treatment for a back condition from Dr. Gelman, an orthopedic specialist, but on direct examination plaintiff answered "no" to the question, "[D]id you ever go and seek medical help for your lower back because you couldn't work?" On cross-examination, defense counsel questioned plaintiff about hospital records from 1969 in which plaintiff reported having intermittent back pains for some ten years which had "been worse lately." Those 1969 records also contained a notation that "in the last month [plaintiff] has been only able to work three or four days."

Plaintiff in his direct examination testified that he had tried but was unable to do heavy work in the fall of 1984 after the collision. Defense counsel attacked the credibility of that testimony as well, point-

ing out that in deposition testimony given in October of 1984 plaintiff testified he was "not really sure" whether his pain prevented him from working since he had not engaged in much activity at that time.

Defense counsel completed cross-examination of plaintiff by exploring in detail the circumstances concerning a 1981 rear-end automobile accident which caused him low back problems and other injuries which plaintiff said had subsided before the car-truck collision. Defense counsel insinuated that plaintiff's alleged recovery from the preexisting injuries was in part attributable to his settlement of the claim arising from that earlier automobile accident.

Clearly the most vigorous attempt to discredit plaintiff's credibility occurred during the presentation of defendants' evidence when the plaintiff's own medical doctor, Dr. Gelman, testified that he had examined the plaintiff after the car-truck collision and concluded he was "not seriously injured." Gelman explained the difference between subjective findings and objective findings, then explained in detail the various tests he used to determine if there were any objective basis for the plaintiff's complaints, characterized by Gelman as including "moans and groans during the entire examination." Gelman then highlighted one test he performed on the plaintiff which caused him to conclude that the plaintiff's subjective complaint of pain was "totally illogical." When the doctor had pressed on a spot in the middle of the back, the plaintiff complained of leg and arm pains even though, as Gelman explained,

> the nerves from that area go from that area, they go around the chest. They don't go up to the arm or down the leg.

Rather apologetically Dr. Gelman told the jury why it was his "responsibility as a physician" to test the validity of symptomatic complaints.

> I have to use my—I have to use every ploy, every trick, every bit of experience and every bit of knowledge I have, I want to find out what he needs as a person with a problem. I have to prove to myself he has a serious problem or he

doesn't have a serious problem because if he has a serious problem and I don't treat him properly, I feel responsible, okay.

In the balance of his testimony Gelman belittled the plaintiff's subjective complaints and told the jury "that the patient is in my opinion not seriously injured."

The plaintiff had before trial identified the two persons he planned to call as character witnesses concerning his reputation in the community for truth and veracity. The plaintiff did not call those witnesses as part of his case in chief but instead called them in rebuttal after defendants had presented the caustic Gelman testimony. The trial court overruled defendants' objection to that character testimony, relying on Iowa Rule of Evidence 608(a)(2) and holding:

It is clear that the actions of defendants' counsel did not specifically place the plaintiff's character in issue such as by calling witnesses to testify to the plaintiff's bad character for truth and veracity. I conclude, however, that the combined impact of the various statements counsel made and questions asked on cross-examination of the plaintiff and on direct examination of Dr. Gelman were sufficient to place the plaintiff's character in issue.

We first address defendants' contention that the character testimony was not admissible under rule 608(a)(2), then the contention that the testimony was beyond the scope of permissible rebuttal.

I. Iowa Rule of Evidence 608(a), which mirrors the federal rule of the same number, provides:

The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

The sharp question this case presents is whether the methods defendants used to discredit plaintiff's testimony constituted an attack on his character for truthfulness within the ambit of the rule's concluding words "or otherwise," opening the door for evidence of truthful character.

The language of this federal, and Iowa, rule of evidence was shaped by a much-debated controversy concerning just what types of impeachment should justify use of supportive character evidence. We listed in *State v. Peterson*, 219 N.W.2d 665, 671 (Iowa 1974), the five generally-recognized methods for calling into question the veracity of a witness: (1) inconsistent statements by the witness; (2) bias; (3) bad character; (4) defective capacity to observe, remember or recount; and (5) proof of material facts at variance with the witness's testimony. Cases and commentators have traditionally agreed that impeachment by the third method may be answered with rehabilitative character testimony, while impeachment by the second and fourth methods may not; but they have disagreed concerning the first and fifth methods. *See generally*, E. Cleary, *McCormick's Handbook of the Law of Evidence* § 49 (2d ed. 1972) (hereafter McCormick); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 608[08] (1985) (hereafter Weinstein); 4 J. Wigmore, *Evidence* §§ 1104–10 (Chadbourn rev. 1972).

Wigmore expressed the view that a witness's self-contradictory statements, and contradiction of the witness's testimony by other witnesses, were impeachment methods too remote from attacks on the witness's character to justify supportive character testimony. *Id.* §§ 1108–09, at 240–44. This view was reflected in three early decisions of this court holding inadmissible supportive character testimony offered to rehabilitate witnesses impeached by their own contradictory statements. *See State v. Hoffman*, 134 Iowa 587, 592–93, 112 N.W. 103, 104–05 (1907) (upholding trial court's refusal to allow supportive character testimony); *State v. Owens*, 109 Iowa 1, 3, 79 N.W. 462, 463 (1899) (insinuation of witness's untruthfulness in cross-examin-

er's questioning did not warrant supportive character testimony); *State v. Archer,* 73 Iowa 320, 323–25, 35 N.W. 241, 243 (1887) (upholding exclusion of supportive character evidence offered to rehabilitate witness who made contradictory statements). In *Hoffman* we cited Wigmore's treatise and used his rationale that general reputation for truthfulness "is too remote to be admissible in support of the testimony of a witness impeached by proof of conflicting statements." 134 Iowa at 592–93, 112 N.W. at 105.

After we had decided those cases, however, several wellreasoned appellate decisions held that trial courts should be granted considerable discretion to determine whether to receive supportive character testimony after a witness's credibility has been attacked with contradictory statements or contrary evidence. *See, e.g., Outlaw v. U.S.,* 81 F.2d 805, 807–08 (5th Cir.), *cert. denied,* 298 U.S. 665, 56 S.Ct. 747, 80 L.Ed. 1389 (1936) (trial court should consider circumstances and determine whether, "taking the whole situation together," character for truth was being attacked); *Colvin v. Wilson,* 100 Kan. 247, 248–50, 164 P. 284, 285 (1917) (indirect attack on witness's credibility gave trial court discretion to permit rebuttal testimony concerning reputation for truthfulness); *Redd v. Ingram,* 207 Va. 939, 942–43, 154 S.E.2d 149, 152–53 (1967) (no abuse of discretion to allow supportive reputation testimony after impeachment by cross-examination and introduction of contradictory testimony). The McCormick and Weinstein treatises have both championed this more flexible approach. *See* McCormick § 49, at 105 ("A more sensible view is the notion that the judge should consider in each case whether the particular impeachment for inconsistency and the conflict in testimony, or either of them, amounts in net effect to an attack on character for truth and should exercise his discretion accordingly to admit or exclude the character-support."); 3 Weinstein ¶ 608[08] at 608–48 ("The mandate in [Federal R.Evid.] 401 to admit all relevant evidence should be construed to authorize— but not to require—the admission of supportive character evidence if the trial judge finds in the circumstances of the particular case that the contradiction amounted to an attack on veracity.").

The drafters of the federal and Iowa Rules of Evidence, in adopting rule 608(a), accepted the McCormick and Weinstein view which gives considerable discretion to the trial court, rather than the approach of Wigmore which McCormick described as "unrealistic" and "mechanical." McCormick, § 49, at 105. The Federal Advisory Committee note to this rule, which capsules this historical backdrop, states in pertinent part:

> Character evidence in support of credibility is admissible under the rule only after the witness' character has first been attacked, as has been the case at common law. Maguire, Weinstein, et al., Cases on Evidence 295 (5th ed. 1965); McCormick § 49, p. 105; 4 Wigmore § 1104. The enormous needless consumption of time which a contrary practice would entail justifies the limitation. Opinion or reputation that the witness is untruthful specifically qualifies as an attack under the rule, and evidence of misconduct, including conviction of crime, and of corruption also fall within this category. Evidence of bias or interest does not. McCormick § 49; 4 Wigmore §§ 1106, 1107. *Whether evidence in the form of contradiction is an attack upon the character of the witness must depend upon the circumstances.* McCormick § 49. Cf. 4 Wigmore §§ 1108, 1109.

(Emphasis added.)

■ Defendants urge us to construe very narrowly the words "or otherwise" in rule 608(a), believing we should retain the hard and fast Wigmore rule adopted by the early Iowa cases cited above. We conclude, however, that we can only be faithful to the wording and spirit of this rule, reflected in the quoted advisory committee note, by granting trial courts considerable discretion to allow supportive character testimony. *See State v. King,* 197 Neb. 729, 733, 250 N.W.2d 655, 658 (1977) (applying

state rule of evidence identical to federal rule 608(a) and giving trial court discretion to determine whether impeachment "amounts in net effect to an attack on character for truth"). This approach, advocated by McCormick and Weinstein, is also consistent with our fundamental view that the admission of evidence should ordinarily lie within the sound discretion of the trial court. *State v. DeBerg*, 288 N.W.2d 348, 351 (Iowa 1980) (quoting *State v. Gartin*, 271 N.W.2d 902, 910–11 (Iowa 1978)).

We will not find an abuse of discretion in the trial court's admission or exclusion of evidence unless its action is clearly unreasonable, and the circumstances of this case demonstrate a sound and reasonable exercise of discretion. The trial court carefully explained why it believed the "combined impact" of counsel's statements, cross-examination, and direct examination of Dr. Gelman did "place the plaintiff's character in issue." Here, as in most hotly-contested jury trials, the trial court's proximity to the situation and its acute awareness of the parties' adversarial positions—attacks and counter-attacks—gave it an up-close perspective for determining when the plaintiff's character for truthfulness had been so attacked as to open the door to rehabilitative character testimony.

■ We emphasize, as have other courts, that discretion in this matter must be exercised with special care and circumspection so that time is not unduly wasted with opinion and reputation testimony concerning character. Trial courts should routinely apply the balancing test of Iowa Rule of Evidence 403 to ensure that the probative value of proferred character testimony is not substantively outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See U.S. v. Medical Therapy Sciences, Inc.*, 583 F.2d 36, 41 n. 6 (2d Cir. 1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed.2d 91 (1979) ("it is always open to the trial judge to deny a party the opportunity to present only cumulative evi-

dence bearing solely on credibility"); *State v. Hall*, 297 N.W.2d 80, 87–88 (Iowa 1980) *cert. denied*, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (vesting trial court with "broad discretion" in applying rule 403 balancing test). The jury's attention must not be diverted unduly from the substantive questions it must answer. *U.S. v. Medical Therapy Sciences, Inc.*, 583 F.2d at 42 ("It is not every cross-examination that should trigger the authority of rule 608(a)'s provision for supporting character evidence.").

■ The trial court did not abuse its discretion in determining that the defendants' several attacks on plaintiff's credibility had opened the door for admission of the proffered brief supportive testimony concerning his character for truthfulness.

II. Defendents also contend that the trial court should have sustained their second objection challenging the use of this character evidence in rebuttal rather than as part of the plaintiff's initial presentation of evidence. We pass the question whether defendants' objection was sufficiently specific to preserve this assigned error, though noting that the objection—"beyond the scope of permissible rebuttal"—was overly broad and gave the trial court very little guidance. *See Goetzman v. Wichern*, 327 N.W.2d 742, 745 (Iowa 1982) (quoting *Dutcher v. Lewis*, 221 N.W.2d 755, 759 (Iowa 1974) ("the test is whether the exception taken alerted the trial court to the error which is urged on appeal.")).

■ We review for abuse of discretion, and our cases recognize that considerable discretion is lodged in the trial court in determining what rebuttal evidence should be received. *See, e.g., Karr v. Samuelson, Inc.*, 176 N.W.2d 204, 211 (Iowa 1970); *Robson v. Barnett*, 241 Iowa 1066, 1071, 44 N.W.2d 382, 384 (1950). The fact that testimony might have been useful and usable in the case in chief does not necessarily preclude its use in rebuttal. *See In re Estate of Shama*, 245 Iowa 1039, 1049, 65 N.W.2d 360, 365 (1954).

■ The trial court did not abuse its discretion in denying defendants' objection to this rebuttal testimony, because it is clear the trial court believed the admissibility of the character testimony depended in part on the defendants' use of Dr. Gelman to discredit plaintiff as part of their own presentation of evidence.

We conclude there is no merit in either of the defendants' two assignments of error, and we therefore affirm the judgment of the district court.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., and LARSON, SCHULTZ, and CARTER, JJ., who dissent.

REYNOLDSON, Chief Justice (dissenting).

I would reverse on the ground trial court erred in overruling defendants' objections to the rebuttal testimony concerning plaintiff's character for truthfulness.

It is the acknowledged and traditional role of lawyers in our adversary system of administering justice to seek out and reveal untruthfulness in the testimony of adverse witnesses. The result of this case is to hold that if the lawyers are successful, the discredited witness is given a final opportunity, in trial court's discretion, to nonetheless rehabilitate his or her character as a truthful person. The process encumbers and extends the trial and ordinarily would scramble the lawyers in a search for rebuttal and surrebuttal witnesses, on both sides of the proposition, to provide general testimony that has nothing to do with the facts of the case.

Whatever the "or otherwise" language may mean in Iowa Rule of Evidence 608(a), I would hold it does not open the door for such testimony in the circumstances disclosed by this record.

LARSON, SCHULTZ, and CARTER, JJ., join this dissent.