IN RE ESTATE OF J. B. REEVE, SARAH A. REEVE, Executrix,
Appellant.

**Delivery of Notes:** SUFFICIENCY: *Evidence.* A banker wrote out a
note to his daughter, in her presence, which was found in an
envelope at his death, deposited in the separate pocket of a
note case in his safe at the bank. Envelope also contained
certificates of deposit written by him at the time, and other
notes indorsed by him in blank. Decedent had written his
daughter's name on the envelope, with a statement that the
notes were held as collateral security, and had signed his name.
*Held,* that such facts showed that decedent had kept the notes
as his daughter's banker, for safe-keeping, and for the pur-
pose of collecting and crediting the proceeds of the other notes
found therewith, which act constituted a sufficient delivery of
the notes.

REDELIVERY FOR SAFE KEEPING. Where notes given by decedent to
his daughter as collateral to a note executed by him to her for
a *bona fide* indebtedness were delivered to the daughter, the
fact that she returned them to decedent, who was a banker, for
safe keeping and collection, did not deprive her of her rights
in the notes so pledged as collateral.

**Estate:** CLAIMS: *Evidence.* Where one of decedent's former em-
ployes testified that decedent had requested her in 1895 to
figure the interest on his note to his daughter, and there was
then nearly $2,000 due thereon, and that decedent spoke of
having the note renewed, saying that he had borrowed the
money, and another employe testified that during the fall of
the following year decedent and the daughter figured the inter-
est on the note, and her testimony showed that the note in
question, dated October 19, 1896, for $2,310 and found in dece-
dent's safe, was then executed by him, such evidence showed
a *bona fide* indebtedness, constituting a valid claim against
decedent's estate.

*Appeal from Benton District Court.*—HON. G. W. BURN-
HAM, Judge.

TUESDAY, MAY 8, 1900.

J. B. REEVE died testate June 18, 1897, and appel-
lant, Sarah A. Reeve, his widow, was appointed temporary

administratrix, and, upon the probating of the will, was confirmed as executrix thereof. In her final report she reported a long list of promissory notes as held by certain creditors of the estate, including Mrs. E. M. Pierce, as collateral security. In her report as temporary administratrix she credited herself as follows: "September 4, 1897, by paid to Ella M. Pierce amount of collections on notes Nos. 17,404. 16,691, 17,406, and 17,399, against Charles Grimm, A. J. Bostrom, Conrad Fuhs, and E. A. Grimm, $678.85. The said notes, with others, were held by said Ella M. Pierce as collateral security for the payment of the note given by J. B. Reeve, of date Oct. 19, 1896, in amount of $2,310, bearing 8 per cent. interest after maturity; note payable in one year after its date, and is the property of said Ella M. Pierce." She also credited herself as follows: "Nov. 23, 1897, by check (Pierce collateral notes), $100.00, which $100.00 was collected by Ella M. Pierce herself, on collateral notes held by her as collateral for payment of note given by J. B. Reeve, of date October 19, 1897, in amount of $2,310.00, drawing interest at 8 per cent. after maturity; note payable in one year after its date, and is the property of Ella M. Pierce." J. B. Wolf, for himself and other creditors of the estate, alleging that the estate is insolvent, filed objections to said report, in substance as follows, and in which the administrator *de bonis non* joins: That said note from J. B. Reeve to Ella M. Pierce was wholly voluntary and without consideration, and is void as to creditors; that said note was never delivered by J. B. Reeve to said Ella M. Pierce; that said alleged collateral notes were never delivered by J. B. Reeve to Ella M. Pierce, but remained in his possession and control up to the time of his death; that Ella M. Pierce has not retained possession of said collateral notes, but that they, with her knowledge and consent, have been in possession and control of J. B. Reeve and of the appellant, as administratrix and executrix, and have been treated as the property

of the estate, and that Ella M. Pierce has waived any right she may have had to said collateral notes; that said six hundred and seventy-eight dollars and eighty-five cents and said one hundred dollars were wrongfully turned over to, and paid by appellant to, Ella M. Pierce. The case was tried as in equity, and the claim of Ella M. Pierce on the promissory note of J. B. Reeve to her was allowed as a third class claim against the estate, in the sum of two thousand three hundred and ten dollars, with interest at 8 per cent. from maturity, and said credits for six hundred and seventy-eight dollars and eighty-five cents and for one hundred dollars were disallowed, and appellant ordered to pay over said money to John S. Stanley, administrator *de bonis non,* and to regain possession of said collateral notes within thirty days, and turn the same over to said administrator *de bonis non.* From this decree S. A. Reeve appeals.—*Reversed.*

*Lewis Heins* for appellants.

*Gilchrist & Whipple* and *Cato Sells* for appellee.

GIVEN, J.—I. The facts, as we find them to be from the evidence, the competency of which is not questioned, are as follows: For a number of years prior to his death Mr. J. B. Reeve was conducting a private bank at Garrison, Iowa. At the time of his death Mrs. Ella M. Pierce, daughter of deceased, and her husband, Mr. T. A. Pierce, came from their home, in Colorado, to Garrison. A day or two after the funeral, Mrs. Reeve, Mr. and Mrs. Pierce, and Miss Magirr, who had been employed in the bank up to the death of Mr. Reeve, went to the bank to look over its affairs. In the safe, to which Miss Magirr alone had the combination, was an envelope containing said note of J. B. Reeve to Mrs. Pierce, said alleged collateral notes, and a certificate of deposit to Mrs. Pierce, and one to her minor son. Upon the outside of the envelope was written in the handwriting of J. B. Reeve, on one side:

"Ella M. Pierce. These notes are held by Ella M. Pierce as collateral. J. B. Reeve." On the other, the words: "Ella Pierce. Ella Pierce." The alleged collateral notes payable to order, and some of those payable to bearer were indorsed in blank by J. B. Reeve. This envelope and contents were then, and had previously been, kept in the note case used by the bank, but in a separate pocket from the notes of the bank. Mrs. Pierce took and retained possession of said envelope and contents, and produced the note of her father to her on this trial. The note bears credits at different dates from July 21 to October 12, 1897, for amounts collected by Mrs. Pierce on the collateral notes aggregating nine hundred fifteen dollars and seventy-five cents, leaving one thousand three hundred and seventy-one dollars and eighty cents, which she asks to be allowed as a claim of the third class against the estate.

II. On the claim that the principal note was voluntary and without consideration, we will say that we are in no doubt from the evidence, the competency of which is not disputed, that said note represents a *bona fide* indebtedness to the full amount thereof for money loaned and interest thereon. This principal note was unquestionably executed by J. B. Reeve. Miss Clark, who was in his employ in 1895, testifies that on August or September of that year he told her to figure up the interest on his note to Mrs. Pierce "before she came home; that he wanted her to do the same, and compare our figures;" that she did so; and that the note amounted to nearly two thousand dollars. She further says: "I heard Mr. Reeve speak about borrowing money from Mrs. Pierce. He said he thought he would have the note renewed. I heard him say that he borrowed the money during the financial crisis of 1893." Miss Magirr, who was employed in the bank in 1896, testifies: "I remember in the fall of 1896, when Mr. Reeve and Mrs. Ella M. Pierce were at the bank. It was in the evening, after we had closed the bank. They were

at a desk, figuring up her note, and I was at another table. As near as I can remember, I was putting away the checks in the check case. I remember him going to the certificate register and writing out certificates of deposit,—one for $140, and one for Allan for a smaller sum; $20, I think it was." Other testimony of this witness leaves no doubt but that at that time the principal note in question was executed.

III. To sustain her report, the appellant, Mrs. Reeve, testified in her own behalf, and she called and examined Mr. and Mrs. Pierce. The testimony of appellant and of Mr. and Mrs. Pierce is, in part, to personal communications and transactions between them, respectively, and Mr. Reeve, deceased; and to this the appellees object as incompetent, under section 4604 of the Code. In view of our conclusion on the evidence, the competency of which is not questioned, it is unnecessary that we pass upon this objection. We now inquire whether there was such a delivery of the principal note and of the collaterals to Mrs. Pierce as to give her title thereto. That it was the intention of both parties that the principal note should stand as a valid note in her favor, and that the collateral notes should stand as security for the payment thereof, is entirely clear; but, if there was no delivery of the principal note, then it is a nullity, and in that case she would take no title in the collaterals. In 1 Daniel, Negotiable Instrument (3d ed.) section 63, it is said: "It is to be observed, however, that delivery may be constructive as well as actual, by manual passing of the instrument. Where the plaintiff's bankers indorsed a note to him, and put it in an envelope with his papers, at the same time making appropriate entries of the transaction on their books, it was held sufficient delivery to him, and that a subsequent assignment of the bankers could not defeat it." It is further said: "But, if advances had been made on the faith of a delivery, then the promisee or indorsee would be entitled to a delivery." See *Williams v.*

*Galt,* 95 Ill. 172; *Clark v. Boyd,* 2 Ohio, 56; *Clark v. Sigourney,* 17 Conn. 511. In Tiedeman Commercial Paper, section 34, it is said: "And even where, in indorsing a note the indorser, who sustains the character of banker to the indorsee, instead of making an actual delivery to him, puts it into an envelope containing other papers of the indorsee, this is held to be a good constructive delivery." Mr. Daniel, in his first volume (section 67), says: "It is essential to delivery that the minds of both parties should assent, in order to bind them; and if, through inattention, infirmity, or otherwise, one does not assent, the act of the other is nugatory." As already stated, we are in no doubt but that the minds of both these parties assented that these notes should stand as the property and security of Mrs. Pierce. We give no force to the presumption that would arise from Mrs. Pierce's possession of the notes, that possession being fully explained. We think it fairly appears that, to evidence and secure this existing indebtedness, Mr. Pierce executed the principal note in the presence of, and with the consent of, Mrs. Pierce, and that the same was kept by him thereafter for her as her banker,—for safe-keeping, and for the collection of the collaterals, and the crediting of the proceeds thereof upon the principal note. This we think would constitute a constructive delivery, under the authorities quoted above. See, also, *Sharmer v. Johnson,* 43 Neb. 509 (61 N. W. Rep. 728),—a case in many respects quite similar to this. If it should be said that there was not a constructive delivery, still we think the evidence warrants the conclusion that there was an actual delivery of all the notes. Miss Magirr's testimony alone is sufficient, we think to show an actual delivery. It appears that this principal note was executed in renewal of a former note, with which the callaterals had been put in the envelope.

IV. The claim that these notes, if ever delivered to Mrs. Pierce, were returned to Mr. Reeve, and that thereby

she waived any right she had in them, is not well sustained.

If actually delivered, as we think they were, they were returned by her for the purpose of safe-keeping and collection, and that would not deprive Mrs. Pierce of her rights in the notes. In Colebrook Collateral, Security, (2d ed.) section 2, it is said: "The holder of negotiable instruments as collateral security, receiving the same so as to become a party thereto, does not lose his right and title thereto, nor to the proceeds thereof, by a delivery of the same to the pledgor, where such delivery is made with the intention or upon an agreement that the pledgor shall proceed, for and on behalf of the pledgees, to make collection thereof, or do some other proper and necessary act in respect thereto. Where collection of collaterals is the object, the pledgor is regarded as the representative or agent of the pledgee." The author also states that, where there is such a delivery under an agreement that the pledgor may exchange or substitute other collaterals, the exchange does not affect the title to the securities in the pledgee by proper indorsement. It is fairly inferable from all the evidence that it was so agreed in this case, but if not, Mr. Reeve could not affect the rights of Mrs. Pierce by changing collaterals without her consent.

Our conclusions upon the whole record are that this principal note stands for a *bona fide* indebtedness, that the notes claimed as collaterals thereto were set apart and pledged as such by Mr. Reeve, that there was such a delivery of these notes as to vest Mrs. Pierce with title thereto, and that were was no re-delivery thereof that devested her of that title. It follows from these conclusions that the order and decree of the district court must be reversed, and that a decree must be rendered in harmony with this opinion.— *Reversed.*