NORTH SIDE STATE BANK of Rock Springs, Wyoming, Appellee, v. WILLIAM SCHREIBER, Appellant.

No. 42770.

FEBRUARY 5, 1935.

G. C. Stuart and A. V. Hass, for appellant.

J. W. Kridelbaugh, for appellee.

PARSONS, J.—The plaintiff in this case is a bank in the state of Wyoming, located at Rock Springs. It brings this suit on a note for $3,729.58 with interest at 4 per cent per annum, dated July 7, 1930, and due and payable December 1, 1931. The answer contains, first, the general denial; admission of making the note; alleges defendant is not liable thereon and that he never primarily was liable to plaintiff, that he signed the note as surety for J. W. Peterson and in compliance with an agreement between Peterson and the plaintiff, and that the note should never have been delivered to the plaintiff, and that the plaintiff is not the rightful owner thereof. While admitting the contract between Peterson and the plaintiff in its petition, in an amendment it sets up that by mistake of his counsel part of it was left out, and sets out that part which states that at the time of the execution of the note Peterson owed $32,500 to the plaintiff bank, and that this indebtedness was to be reduced by the sum of $4,500 on or before December 1, 1930, and that upon the payment of the $4,500 and satisfaction of all other claims against Peterson, he was to deliver three notes to the bank, one the note in suit, another of like amount, and another in the sum of $5,000, all notes to bear 4 per cent interest. The defendant filed another amendment to his answer setting forth that the note in suit was received by him from Twin Falls, Idaho, sent by one J. W. Peterson, and that in this letter came the other notes, making three in all, and sets forth that he completely relied upon all the terms of the contract above referred to.

The plaintiff filed a reply setting forth that the note in suit was delivered to Peterson, and by Peterson to the plaintiff without any conditions, and that if any other conditions were made the plaintiff knew nothing of it, and further that after the note was delivered to the plaintiff, defendant repeatedly promised to pay the same, and secured an extension of it on the promise that he would pay the same, but failed ever to make any claim to the plaintiff that the note had been wrongfully delivered. That the defendant by his action and conduct had waived any claim for want of consideration of said note or delivery of same, he having full knowledge at the time that the notes were valid.

The facts in the case are not much in dispute. J. W. Peterson was a son-in-law of the defendant in this case. He lived in Idaho for the last eight years, and prior to that time lived in Nevada and Wyoming. He was in the farming and stock-raising business;

did business with the plaintiff bank. The plaintiff bank represented by one Brown, its attorney, and Peterson and Charles North, his attorney, met at Pocatello, Idaho, and had a discussion as to how the indebtedness could be taken care of. That Mr. Brown was to prepare a contract. One was sent but not signed. The defendant, Mr. Schreiber, was in Pocatello at that time. After this a contract was drawn which has been introduced as Exhibit D-3, which is substantially like the contract set out in the petition. This contract provided for a reduction of Peterson's debt by the sum of $4,500 on or before December 1, 1930, and the delivery to the bank of two notes of $3,729.58 each, payable, one December 1, 1931, one December 1, 1932, and a note for $5,000 payable December 1, 1933, all bearing interest at 4 per cent, to be indorsed or signed by the defendant. The bank was to cancel and mark "paid" all of the promissory notes held by it, and release Peterson from any and all claims except the aggregate of the notes, $12,459.16. One of the stipulations was that the bank, upon execution and delivery to it of these three promissory notes, should waive, cancel, and discharge all indebtedness of Peterson's except the three notes. It was then provided in the contract that if Peterson failed and neglected to pay this $4,500 on or before December 1, 1930, or failed and neglected to execute and deliver the promissory notes in the sum of $12,459.16, then the agreement was to be void and of no effect. It was signed by the plaintiff bank and Peterson. On July 26, 1930, the attorney, Mr. North, wrote the defendant inclosing Peterson's contract fully signed, also the three notes, and requested the signing of same. Mr. Peterson was the son-in-law of defendant, and his wife signed most of the notes with him. These notes held by the bank aggregated, as shown by the letter of the plaintiff to the bank at Twin Falls, something in excess of $70,000. After both parties had rested, and at the close of all the testimony, the plaintiff and defendant each made a motion for a directed verdict. The court thereupon, having heard from counsel, sustained the motion of the plaintiff and overruled that of the defendant, to which the defendant excepted. By direction of the court a verdict was then returned in favor of the plaintiff in the sum of $3,905.52, with interest at 4 per cent per annum from March 23, 1934, and judgment was entered upon the verdict. From this the defendant has appealed.

The defendant is a man of business experience, worth, according to his statement made to the plaintiff bank, over $40,000. The

situation in this case is one frequently met with, where a father with large business experience, having accumulated considerable property, has a child,—in this case a daughter, whose husband turned out to be not forehanded in business matters, and who, after several years of married life, had accumulated debts way beyond his capacity to pay, and called upon his father-in-law to assist him and his wife in their financial difficulties, and he fell for it.

The plaintiff bank had claims, perhaps some good and some not so good, against the son-in-law Peterson, and at least over $50,000 of the claims on which the defendant's daughter, Ruth V. Peterson, was a signer. These claims were in the form of notes, some secured by chattel mortgage. The financial condition of the son-in-law and daughter was such that the bank wanted an adjustment and entered into an agreement with Peterson, dated July 7, 1930, by which the bank agreed that the indebtedness, to wit, of Peterson and wife, at that time amounted to $36,959.16, secured by chattel mortgages, and that Peterson should reduce the indebtedness before the 1st day of December, 1930, by paying $4,500 thereon, and that upon such payment, the balance of the indebtedness should be reduced to $12,459.16 of which said sum of $3,729.58 should be payable on December 1, 1931, $3,729.58 on or before December 1, 1932, and $5,000 on or before December 1, 1933, all bearing interest at 4 per cent. That the notes were to be given for these sums, and that Peterson should cause these notes to be signed and indorsed by the defendant. That upon the delivery of the three notes indorsed by William Schreiber to the bank, the bank should thereupon cancel and mark "paid" all promissory notes and other evidence of indebtedness, except the said sum of $12,459.16, and release and satisfy a mortgage of record, and to deliver to Peterson any and all mortgages or other securities held by it securing the indebtedness then due and owing to the plaintiff by Peterson. It then provided that the bank should, upon the execution and delivery of said three promissory notes, waive, cancel, and discharge all indebtedness, both principal and interest, except as above stated. Another provision in the contract was as follows:

"In the event the said party of the second part shall fail, neglect or refuse to pay the said sum of $4,500.00 on or before the first day of December, 1930, as hereinabove set out, or shall fail, neglect or refuse to execute and deliver said promissory notes in the total sum of $12,459.16 after such payment has been made, or shall fail,

neglect or refuse to procure the endorsement of said promissory notes by the said William Schreiber, then this agreement shall be void and of no effect."

This agreement was executed by the plaintiff bank and by Peterson, and was drawn by one Brown, the attorney for the plaintiff bank, and North, the attorney for Peterson, and after the same was signed it was sent by North, July 26, 1930, to the defendant at Chariton, Iowa, together with the three notes. The defendant received this and answered August 2, 1930, saying in his answer he did not see how Peterson was going to meet his obligations and keep up other necessary expenses, as he was to meet the payment of $4,500 on December 1, 1930, and that the defendant was not in a position to pay the $4,500. He said further, "I know he is anxious to dispose of Facinelli", who was president of the plaintiff bank, and spoke of Peterson making a loan from the Twin Falls, Idaho, bank, and that he had wired the Twin Falls bank as North requested. Mr. North wrote the plaintiff August 4, 1930, telling them "the total settlement is $16,959.16 upon which credit is to be given for the lambs already shipped, leaving a balance of $15,000.00." "If you will read the contracts I have sent you, carefully, you will see this is the case." He further said that "of this amount $4500.00 is to be paid this fall, of which $2,000.00 has already been paid, leaving $2500.00 more due to pay this fall, a note for $3729.58 next year, a like amount the following year, and $5,000.00 the last year". Again North wrote from Twin Falls, Idaho, where he had his office, that Peterson was in his office and said "you have inquired of him whether or not, if the original $4500.00 due this fall on his contract be not paid, the whole amount of the settlement should become due?" Mr. North said in reference to this: "If you will read the contract carefully you will see that it provides that, in the event the balance of the $4500.00 is not paid this fall, then there is no settlement and the contract is void and Peterson's situation remains the same" as before. He then added this to the letter: "We will not deliver any notes to Facinelli but they will be left with the Twin Falls Bank and Trust Company or in my office until the balance of the $4500.00 has been paid, at which time we will require Facinelli to send all his notes and a release of mortgage to the Twin Falls Bank and Trust to be delivered to Peterson when Peterson delivers the notes described in the contract to the bank to be delivered to Facinelli." And he tells the defendant: "We would like to have

these notes and contracts returned at the earliest possible time so that there will be no question but that the deal between Facinelli and Peterson is going through." Following receipt of this letter by defendant, he wrote North on August 13, 1930, "Enclosed find three notes and two contracts as requested by you. * * * Now Mr. North be sure and receive full cancellation and all evidences of indebtedness of Mr. Peterson to Mr. Facinelli and North Side Bank of Rock Springs before turning over our three notes for $12,459.16 to Mr. Facinelli." These all appear in the exhibits introduced by the defendant.

So that the defendant had full knowledge that all evidence of indebtedness not otherwise provided for in the contract between Peterson and the plaintiff bank were to be sent to the Twin Falls Bank & Trust Company, together with the releases of mortgages before the three notes sent by defendant to North were to be turned over. On November 8, 1930, and before the $4,500 was to be paid, the plaintiff bank sent to the Twin Falls Bank & Trust Company all the obligations it held against Peterson and his wife, together with a release of the different mortgages held by the plaintiff bank against either of the Petersons, with instructions to return to the plaintiff bank the notes involved and set forth in the contract between Peterson and the bank.

The object of the defendant in signing the notes was, of course, that his daughter and her husband should be released from all their obligations, then existing, to the plaintiff bank. Mr. Facinelli, president of the plaintiff bank, was a witness and testified that he thought the note in suit came into the bank's possession shortly after December 10, 1931. This was shortly following the sending of obligations of Peterson to the Twin Falls bank on November 8, 1930, and the sending of the releases of mortgages, and that he got it from the bank's attorney, Mr. Brown. He thought it had been sent to Brown by Attorney North, and that nothing had ever been paid on the note in suit. He testified that all documents required in the contract were sent to the Twin Falls Bank & Trust Company. That they had never been in his bank since that time. Mr. Peterson had never offered to return them; Schreiber had never offered to get them. He also testified as to the $4,500 note, and said it was not in the bank records any more, that it had been either paid or charged off, that it was not paid before December 1, 1930, and they sent the notes to the Twin Falls bank. That on November 8, 1930,

the bank had been paid on the $4,500 debt the sum of $1,624.50, and that the bank had in its possession yet the notes of Peterson and Schreiber in the principal sum of $12,459.16. That the bank did not claim any ownership in any of the notes since their delivery to the Twin Falls bank. That the bank had never recalled the papers.

The defendant was notified by the bank on November 18, 1931, that the first note would become due December 1, 1931, and that to the writer it was quite evident that Peterson was not going to be able to take care of it. The defendant replied December 2, 1931, that he had written Peterson about the matter and said that at present he was unable to help Peterson; that he had taken back some property thinking he might help Peterson. The defendant wrote another letter to Brown, January 27, 1932, offering some bank stock he had, to take care of the note. On December 9, 1931, defendant had written to Brown, "It is impossible for me now to pay Mr. Peterson's note", and that as soon as money began to circulate Mr. Peterson and he would take care of the note. On December 26, 1931, he wrote Brown that he had been unable to secure a loan to pay off the note, and that he expected Peterson to be able to make a payment within a few days. On March 15, 1932, the defendant wrote a letter to Attorney Brown saying: "I am willing to send you bank stock; however, as I depend upon Mr. J. W. Peterson to pay these notes, I must ask you to extend time on this note for one year or until March 15, 1932."

This was all the evidence offered in the case, when both parties rested and motions were filed for instructed verdicts, so the question presented by this case is as to whether or not the court was justified, under the record, in instructing the jury to find for the plaintiff. The evidence discloses that the note in suit was executed by the defendant, and that it came into the hands of the plaintiff in accordance with the arrangements between the parties. The consideration of the note was of course the compromise of the indebtedness of Peterson and his wife. The bank holding that the three notes set out in the contract to be executed and delivered to the bank, was to measure the balance of the indebtedness to the bank owing by Peterson and his wife, by both or either of them. The defendant fully understood the conditions upon which delivery was to be made, and they were made under such conditions.

However, section 9476 of the Code undertakes to deal with "Delivery—when effectual", and says:

"Where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

The contrary has not been proven. On the other hand, North fully informed the defendant of the intention to have all these obligations of the Petersons sent to Twin Falls, together with the releases, so that the delivery could be made and the deal closed up, and the defendant knew this and does not deny it, hence there was a proper delivery to the plaintiff bank. As to the question of consideration, the note is a written contract. Section 9440 of the Code is as follows:

"All contracts in writing, signed by the party to be bound or by his authorized agent or attorney, shall import a consideration."

Hence, there was a consideration for this note, and the burden of proof would be upon the party alleging no consideration, to show proof. The contract between Peterson and the bank provided that it should be void if the conditions of the contract were not complied with, i. e., the $4,500 was not paid on or before December 1, 1930, and the three notes endorsed by Schreiber not delivered. In other words, it was simply a provision there that the bank would not agree to scale down the indebtedness unless the conditions were met. It might, without affecting Schreiber, waive this condition. But this condition was for the protection of the bank. Of course it could not accept these notes and not substantially live up to its part of that contract, i. e., surrender all the notes it held other than the $4,500 note and execute the satisfactions of the mortgages. The action of the bank in sending the matters it did to Twin Falls, of which the defendant had absolute notice, and acquiesced therein, and in this case plaintiff disclaiming any other claim or liability against the Petersons, is a full and substantial compliance with the object of the contract between Peterson and the bank. Schreiber was fully advised of every step taken in closing up the transaction. He was satisfied, and when it came up that everything had been done by his agent North, he acquiesced in everything. The defendant, before the note was due, received a notice of the impending due date. He made no claim at that time that he was not liable. In

fact, he took it up with the bank and the bank's attorney for an extension of time. He knew all the facts then that he knows now. He undertook to negotiate by offering to put up collateral in the way of bank stock, to have the note carried over. With the full knowledge of these facts, and taking this position, we think he cannot now take the position that the bank was not the then legal owner of the note and entitled to collect same. Then was the time for him to assert his defenses. He knew all the facts.

Time and again this court has held that where a new note is made, taking up an old note, that that ends it; that it is too late. Why? Because that is a recognition of the validity of the claim of the holder of the note. Here it was clearly recognized that the plaintiff was the holder and owner of the note, and the defendant acknowledged it by his efforts to get the time extended for the payment of the note; by his offering to put up collateral security; his knowledge of the fact that the bank had surrendered all of the notes of his son-in-law and daughter, and that he had acquiesced in the way and method of surrendering them. While defendant's negotiating for extension of time may not have been a waiver, yet the burden of proof was on him when he claimed a conditional delivery, but the proof showed there was no conditional delivery, but was with defendant's full knowledge and consent.

In Windahl v. Vanderwilt, 200 Iowa 816, 203 N. W. 252, this court decided that:

"A signer of a promissory note who fails to repudiate promptly an unauthorized filling of blanks in the note, will be presumed to have ratified the unauthorized act."

In other words, when he finds that an unauthorized act has been done it makes him liable, if he does not then promptly give notice of repudiation. But so far as this affects the delivery of the note in question, defendant knew all about this; knew it in 1930, more than a year before the note became due. He made no objections, he acquiesced in it and ratified it. With the presumptions attaching in this case under sections 9476 and 9440 of the Code, the burden of proof was upon the defendant. When the plaintiff closed its case in chief, no further testimony being put in, it was entitled to an instructed verdict so that the burden of proof rested upon the defendant to establish the matters which he claimed permitted him to defend the judgment against him on the note. There

was not sufficient evidence as required by the burden of proof to establish any of the allegations of the defendant's answer that were relied upon in this case.

In Schmidt v. Hayden, 205 Iowa 1369, 219 N. W. 399, the court says:

"This is all the testimony offered on this proposition, and, under the above well-recognized rules, we feel that it is not sufficient to sustain the burden carried by the plaintiff of establishing that the negligence of the defendant was the proximate cause of plaintiff's injury. The district court did not abuse its discretion in directing a verdict for the defendant."

In re Estate of Work, 212 Iowa 31, 233 N. W. 28, the court said:

"The direction of a verdict, in its last analysis, is always a question of the sufficiency of the evidence." Then cites First Nat. Bank of Montour v. Brown, 197 Iowa 1376, 199 N. W. 272, and further said: "It is apparent from the record in this case that, if a verdict were returned for the defendant, it would be the duty of the court to set the same aside for lack of support by, or insufficiency of, the evidence. This being true, the trial court was fully justified in directing a verdict for the plaintiff", and points out that "to sustain the proposition advanced by the appellant * * * we [the court] would be compelled to say that the defendant has an inherent right to have a jury pass upon his claim, or that the credibility of an uncontradicted and unimpeached witness in all cases presents a jury question. We cannot make such a pronouncement."

So, for the reasons herein set forth, the decision of the lower court is hereby affirmed.

ANDERSON, C. J., and ALBERT, DONEGAN, and RICHARDS, JJ., concur.