IN RE ESTATE OF FLORA B. SMITH.

BRUCE L. SMITH, appellant, v. EDNA CROW, administratrix c. t. a., appellee.

No. 48214.

(Reported in 56 N.W.2d 477)

644

JANUARY 13, 1953.

REHEARING DENIED MARCH 13, 1953.

Volney Diltz, of Des Moines, and W. W. Bulman, of Chariton, for appellant.

Watson & Herrick, of Indianola, for appellee.

MULRONEY, J.—Bruce Smith filed a claim against the estate of his mother, Flora B. Smith, for $5000 based on a note in that amount dated March 10, 1947, signed by his mother, naming him as payee and payable five years after date without interest. The executrix denied execution and delivery of the note and asserted lack of consideration and other defenses. At the trial the claimant introduced the note and established it was executed by decedent and then went on to show the circumstances of how it was found after her death folded up with her will in her lockbox in the bank. Claimant then introduced evidence tending to show that he and his mother had used the box jointly; that his mother had been his agent and practically his de facto guardian; that his mother was indebted to him in approximately the

amount of the note and the note was a settlement of this indebtedness. At the close of claimant's testimony the trial court directed the verdict in favor of the executrix on the ground there "was not a delivery of the note such as is contemplated under the law." Claimant appeals.

Flora B. Smith, a resident of Norwalk, Warren County, Iowa, died testate on February 6, 1951, at the age of seventy-seven years. The deceased wrote out her own will in her own handwriting and this will dated November 22, 1949, was found in a tin lockbox at the Norwalk-Cumming State Bank at Norwalk, Iowa. A day or two after Flora B. Smith's death this lockbox was opened in the presence of the bank president and in the presence of the claimant and his wife and sister. The five-thousand-dollar note was found in the envelope with the will. When claimant saw the note he made the statement that he did not know anything about it and there is no evidence that deceased ever told anyone about the execution of this note. The will left deceased's property to the five children of Bruce and the five children of his sister.

Bruce Smith was fifty years old at the time of the trial. He was seventeen years old at the time his father died, about 1919, and he continued to live with his mother on her farm near Norwalk. He was married in 1929 and after his marriage he and his wife and their children lived with the deceased on this farm. In May 1935 Bruce was sent to the Clarinda State Hospital as insane. He stayed one year and was home one year on parole and in May 1937 was again sent back to the hospital. He stayed in the hospital two years and eight months on this last commitment and when he returned to his family it was thought best that he go to a new neighborhood, so he and his wife and children moved to a Madison County farm. After four or five years in Madison County they moved to Colorado and then in about 1945 to Missouri.

This tin box in the bank bore a label with Bruce's mother's name on it. It fairly appears that Bruce used the box as a receptacle for his important papers and that he carried a key to the box up until 1940 when he turned his key over to the bank. He kept his insurance policies, deed and abstract on his

Madison County farm, and other private papers in the box. After 1940 he went to the bank to get into the box about four or five times a year up until 1945 when he moved to Colorado, and on these occasions the bank employees would open the box for him. The banker testified there were other keys in the bank that would open this box. Just before going to Colorado he went to the bank and put his lease on his Madison County farm in the box.

There was evidence in the case that Bruce's mother owed him money (probably around $6000) coming to him from his father's estate and that she was anxious to settle this indebtedness with him. She looked after all of his affairs when he was in Colorado and Missouri, rented his farm and collected the rents, deposited the proceeds in her account and sent him checks and later sold his farm, signing the contract as Bruce's agent. She visited Bruce when he was in Colorado and Missouri and there was competent evidence of statements made to Bruce that she wanted to settle up with him, and later statements made to Bruce after the date of the note that "she wanted to get out of debt and she wanted to have everything straightened up as she didn't want to owe anybody at her death and she said she had things fixed; that if she should die that Bruce would get what was coming to him." She made statements to Bruce that she would sell her farm if she could get her price as she wanted to get out of debt and have everything fixed and all their business straightened up. She never did sell her farm. There were statements she made to Bruce that she felt she should pay him interest and evidence from which a jury could find that certain checks she sent to him were payments of interest.

I. The only question in this case is whether there was "delivery" of the note as that term is defined in the negotiable instruments law. Section 541.192, Code, 1950, provides delivery "means transfer of possession, actual or constructive, from one person to another." We do not pass on the application of section 541.16, Code, 1950, or the presumption of delivery that might arise by virtue of claimant's possession of the note at the time of filing the claim. This is not argued. Most of appellee's argument in support of the trial court's ruling seems to be based

on the insufficiency of the evidence to show a valid gift, citing such cases as Orris v. Whipple, 224 Iowa 1157, 280 N.W. 617, 129 A. L. R. 1. If that were the only question in the case the executrix could safely admit delivery, for the gift of a donor's own note would create no legal liability against her estate. 38 C. J. S., Gifts, section 55; In re Estate of Knapp, 197 Iowa 166, 197 N.W. 22; In re Estate of Cheney, 223 Iowa 1076, 274 N.W. 5. The gift cases are authority here only to the extent that evidence of similar facts would support sufficient delivery of a gift where more stress is put on the grantor's ridding himself of possession of the subject of the gift.

The claimant did not have the burden of establishing consideration. But as we said in In re Estate of Rule, 178 Iowa 184 at 198, 159 N.W. 699, 704: "The fact as to whether there was any actual indebtedness at the date of the note has some material bearing upon the question whether a delivery of the note was made or intended to be made * * *."

There is some assumption that every honest person desires to pay his debts, so evidence of the indebtedness has direct bearing on whether there was delivery of the instrument which, so the jury could find, evidenced the indebtedness. Here there was ample evidence to support a finding that the mother was indebted to Bruce and the note was intended as a settlement of the indebtedness.

Delivery of a note by the maker is largely a matter of intention. In re Estate of Rule, 178 Iowa 184, 159 N.W. 699; 10 C. J. S., Bills and Notes, section 78d. It is not necessary that delivery be made by manual transfer. The law recognizes this by saying there can be a "constructive" delivery or some act which, under all of the facts, is equivalent to actual delivery.

There can be delivery notwithstanding the maker retains possession of the note and the maker can accomplish delivery by delivering to himself as agent for the payee. 10 C. J. S., Bills and Notes, section 78d; In re Estate of Reeve, 111 Iowa 260, 82 N.W. 912. In the cited case we held there was constructive delivery when a banker made out and signed a note to his daughter to whom he was indebted and placed it among other papers for her in a pigeonhole for her papers at the bank, where it was found after his death.

It is true Bruce did not have knowledge of the existence of the note until after his mother's death or if she ever did tell him about it he did not remember. He cried on the witness stand and there is the record of his mental illness. In In re Estate of Rule, supra, where the note was delivered to a third person to be given to the maker's wife after his death, the opinion does not state that the maker told his wife of the existence of the note though there is in the opinion the statement that she gained information of the existence of the note. The evidence here is that decedent was a secretive person, one who did not make a habit of telling her business to anyone. Admittedly she was the son's agent in most of his business transactions and the jury could find from the record that she considered herself practically the guardian for her son who had suffered much from mental illness. The fact that she constituted herself the guardian for her son with a weakened mind would be material on the question of delivery even though she was not his legal guardian.

In Leighton v. Leighton, 196 Iowa 1191, 1202, 194 N.W. 276, 281, a deed-gift case, the grantor without the knowledge of his wife placed the deed to her in her lockbox to which he at times had access. We held:

"One can hardly conceive of a clearer case of delivery * * * than is shown by the act of a grantor who prepares, signs, and acknowledges a deed, complete and perfect in form, to his wife, son, or daughter, and then, in perfect silence, puts the instrument into the possession of the grantee, where he leaves it, without recall or withdrawal, for the remainder of his lifetime."

The situation with respect to this tin lockbox in the bank is that there was no formal contract with the bank and Bruce or his mother with respect to the box. This box was in the bank at the time Bruce's father was alive and Bruce started using it for his papers in 1917, two years before his father died. At the time of trial it had a label on it with the mother's name but it is clear Bruce used it too and carried a key to it for more than twenty years and even after he turned in his key the bank employees would open it for him. On one occasion the bank employees opened it for his wife when Bruce was in the hospital and she desired to see his insurance policies. Thus it appears

without question that the mother delivered the note to the receptacle where her son kept his important papers. The label on the box is some evidence of her ownership but the long-continued joint use by her son would support a finding of joint ownership. But the question of ownership of the box is not very material. The important thing is the bearing the joint use of the box has on the mother's intent. When inferring intent to deliver from acts and circumstances the jury can infer an intent to deliver to the payee's possession by the act of placing it where the payee keeps other private and important papers.

Upon the whole record we are convinced the question of delivery, at the close of claimant's case, was for the jury. The executrix cites the case of In re Estate of Martens, 226 Iowa 162, 163, 283 N.W. 885, where we affirmed the directed verdict against the claimant in a case much like this. There the daughter filed a claim against her mother's estate based on a note found in her mother's safe for $1500, bearing on the back the statement: " 'This money is coming to her for teaching $1,000, and $500. is what the rest got also. Mother.' " There was much evidence that the daughter had loaned money to her parents that she got from teaching, and evidence that she had agreed to accept a note from her mother for $1500 in satisfaction of the debt, and evidence that the mother had told others she had executed the note and placed it in her safe, and evidence that she told her lawyer if he heard of her death to get the note and give it to her daughter. In affirming the trial court's ruling that this evidence failed to show a valid delivery we relied entirely on the authority of Orris v. Whipple, 224 Iowa 1157, 280 N.W. 617, 129 A. L. R. 1, a deed-gift case. In some respects the Martens case is stronger than the instant case. One distinction that could be made would be the evidence of the joint use of the lockbox here which was not present in the Martens case. But with that evidence lacking, it is possible we would not now approve all of the language or the holding in the Martens case. In any event the opinion is not authority for the executrix here, for the Martens case was tried to the court without a jury. The trial court's decision in that case, made at the close of all of the evidence, had the force of a jury verdict. Here the verdict

650

![black bar]

was directed at the close of claimant's testimony on the ground no jury question as to delivery was presented. We hold claimant was entitled to have the issue presented to the jury. The judgment of the trial court is reversed.—Reversed.

All JUSTICES concur.