IN RE ESTATE OF SAM SHAMA.

ROSE SHAMA, appellee, v. JOHN M. STOCK, as administrator (executor) of estate of SAM SHAMA, deceased, appellant.

No. 48485.

(Reported in 65 N.W.2d 360)

July 26, 1954.

Sifford & Wadden, of Sioux City, for appellant.

L. W. Powers, of Denison, and P. L. Nymann, of Sioux City, for appellee.

GARFIELD, C. J.—Plaintiff filed her claim in probate against the executor of her deceased husband's estate upon a promissory note for $22,000 payable to her, purporting to be signed by decedent. The answer denies that: the signature to the note is genuine, the note was given for a valid consideration, and it was delivered. Trial resulted in verdict and judgment for plaintiff. The executor has appealed.

I. The jury was instructed plaintiff was entitled to recover if she proved by a preponderance of the evidence the signature to the note was genuine. The trial court ruled that delivery of the note was presumed and since there was no proof of nondelivery there was nothing for the jury to decide on this issue. The first seven assigned errors challenge this ruling which seems to be based largely on the last sentence of section 541.16, Code, 1954: "And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

Upon the trial plaintiff testified: her husband died October 16, 1950, she had seen the note (Exhibit 1) before (it was evidently handed to plaintiff on the witness stand by her attorney), she knew her husband's signature, has seen it many times, the signature on the note is his, she had the note before it was brought to court. The note is dated September 15, 1949, payable December 15, 1951, and bears 4½% interest. It was offered and received in evidence. Plaintiff then rested her case.

For defendant a handwriting expert expressed the opinion the signature to the note was not genuine. Defendant offered no evidence the note was not delivered. In rebuttal plaintiff produced direct testimony as to the signature and evidence

tending to show decedent was indebted to her in an amount somewhere near the amount of the note. Admission of the rebuttal evidence last referred to is assailed in the next group of errors considered in Division II hereof.

Defendant contends rebuttal testimony by plaintiff's witness, Mrs. Leisner, entitled defendant to a directed verdict on the issue of delivery or in any event to have such issue submitted to the jury. Mrs. Leisner testified she was a registered nurse, a close friend of the Shamas and was in their home one evening early in August 1950: "I was visiting with Sam [decedent] and he told me he had not been feeling well. I said 'For Rose's [claimant's] protection you should fix things so she would be protected if anything happened' and he went in the bedroom, he said 'I have everything fixed' and got the note Exhibit 1 and brought it out and showed me. * * * He handed it to me. I think he said he had used some of Rose's money and just general conversation by him about the note. I don't just remember. * * * Rose and my husband were there but my husband was outdoors doing some carpenter work. I had the note in my hands that evening. I read it over."

Plaintiff also offered rebuttal testimony by Mr. Armstrong that he was painting in the Shama home in September 1949, both Sam and Rose were there, Sam was in bed and called him into the bedroom to witness his signature to the note, Exhibit 1, he saw Sam sign it, Sam said he owed Rose money. "I am quite sure he mentioned the amount, $22,000."

Defendant relies on Mrs. Leisner's statement that Sam brought the note from the bedroom as substantial evidence it had not theretofore been delivered. We think defendant claims too much for this one circumstance and, in the light of the whole record, it would not support a finding the note was not delivered to plaintiff during the maker's lifetime. It is not surprising the note was kept in the family home nor that decedent was able to produce it on the occasion to which Mrs. Leisner testifies, eleven months after the note was executed, two and one-half months before Sam died. The fair inference from all Mrs. Leisner's testimony is that decedent regarded the note as a just and binding obligation.

██ ██   What we say in In re Estate of Smith, 244 Iowa 643, 647, 56 N.W.2d 477, 479, has application here:

"Delivery of a note by the maker is largely a matter of intention [citations]. It is not necessary that delivery be made by manual transfer. The law recognizes this by saying there can be a 'constructive' delivery or some act which, under all of the facts, is equivalent to actual delivery.

"There can be delivery notwithstanding the maker retains possession of the note and the maker can accomplish delivery by delivering to himself as agent for the payee. 10 C. J. S., Bills and Notes, section 78d; In re Estate of Reeve, 111 Iowa 260, 82 N.W. 912. In the cited case we held there was constructive delivery when a ·banker made out and signed a note to his daughter to whom he was indebted and placed it among other papers for her in a pigeonhole for her papers at the bank, where it was found after his death."

See also In re Estate of Andrews, 245 Iowa 819, 828, 64 N.W.2d 261, 266, 267, which also holds that what constitutes delivery of a note is largely a matter of intention and after an effective delivery has been made the maker has no legal right to recall the note, and his recovery of possession thereof without the payee's consent will not invalidate the delivery. See too 10 C. J. S., Bills and Notes, section 81 ("* * * the act of delivery is not revocable.").

██   Defendant cites 11 C. J. S., Bills and Notes, section 657d(1), page 87, for the proposition "In the absence of evidence to the contrary, it is presumed that a bill or a note was delivered at the time it bears date." We may assume, without deciding, this rule as to time is applicable here, as defendant contends. The presumption would then be this note was delivered to plaintiff September 15, 1949. That decedent was able to produce it about eleven months later at a time when plaintiff was present, for the purpose of demonstrating to a mutual friend that plaintiff was "protected", does not, under the circumstances here, constitute substantial proof of nondelivery.

. ██   Defendant argues the presumption of delivery provided for by section 541.16, quoted above, where a note is no longer in

the possession of one who signed it, does not apply where, as here, the maker is dead. The argument is without merit. The statute provides no such exception as defendant suggests. No authority has come to our attention that supports the contention and it is foreclosed by our decisions.

In re Estate of Cheney, 223 Iowa 1076, 1080, 274 N.W. 5, 8, a claim on a note of a decedent, says: "Likewise, in regard to the question of delivery, the note being in the possession of the claimant, the provision of Code Section 9476(16) * * * would apply." The provision referred to is now the last sentence of section 541.16, Code, 1954, previously quoted.

In re Estate of Work, 212 Iowa 31, 34, 233 N.W. 28, 30, a similar case, states: "It is a well recognized rule that the introduction of a negotiable instrument in evidence by the plaintiff, with proof of the genuineness of the signature, makes a prima-facie case for recovery [citations]. See, also, Section 9476 of the Code, 1927, which provides:" (quoting what is now the last sentence of section 541.16). This same language is used in Pfeffer v. Corey, 211 Iowa 203, 209, 210, 233 N.W. 126, although there the maker was not dead. See also North Side State Bank v. Schreiber, 219 Iowa 380, 387, 258 N.W. 690.

In re Estate of Rule, 178 Iowa 184, 191, 192, 159 N.W. 699, 702, cited with approval in both the Cheney and Work cases, supra, says: "The execution and delivery of the note were shown by the plaintiff, though it is probable that proof of the genuineness of the signature is all that was needed to make the plaintiff's prima-facie case. The genuineness of the signature and the possession of the notes by the plaintiff being shown, there could be no presumption that they were given under circumstances rendering them invalid."

In re Estate of Humphrey, 226 Iowa 1230, 1233, 286 N.W. 488, 489, states: "In the trial the signature of John upon the notes held by claimants was conceded and they were thereupon admitted in evidence. .This established a prima-facie case for claimants. In re Estate of Work, 212 Iowa 31, 233 N.W. 28."

Defendant asserts In re Estate of Chismore, 166 Iowa 217, 220, 147 N.W. 297, by analogy, supports his contention the statutory presumption of delivery does not apply where the

maker is dead. We think the Chismore case and others like it have no application here. They hold merely that in view of what is now Code section 635.57 it is not necessary for an executor or administrator to file a pleading or other writing denying under oath decedent's signature to a written instrument set out in the claim notwithstanding the requirement of section 11218, Code, 1939 (and rule 100, Rules of Civil Procedure, superseding section 11218) that such a written denial be filed.

▮ Section 635.57 provides for the so-called statutory denial of claims against estates: "All claims filed, and not expressly admitted * * * shall be considered as denied, without any pleading on behalf of the estate, * * *." We have uniformly construed this to mean that no written denial under oath of the genuineness of a signature need be filed to any claim—that the statutory denial includes a denial of the signature. Among such decisions, in addition to In re Estate of Chismore, supra, 166 Iowa 217, 220, 147 N.W. 297, are: Smith v. King, 88 Iowa 105, 55 N.W. 88; Dean v. Atkinson, 201 Iowa 818, 822, 208 N.W. 301; In re Estate of Johnson, 210 Iowa 891, 896, 232 N.W. 282; In re Estate of Work, supra, 212 Iowa 31, 35, 233 N.W. 28; McFerren v. First Nat. Bk., 214 Iowa 198, 203, 238 N.W. 914.

It is true, as defendant suggests, one consideration which led to the decisions just cited is the impossibility that a dead person can deny under oath his signature. But the decisions rest on what is now section 635.57 which, as interpreted by us, renders unnecessary any written, verified denial of a decedent's signature to an instrument set out in a claim against his estate.

The impossibility that one deceased can testify to nondelivery of a note does not justify our reading an exception into the statutory presumption of delivery provided for by section 541.16. The argument may, of course, be addressed to the legislature. We observe in this connection, however, the impossibility of decedent's testimony of nondelivery is at least partly balanced by the incompetence of plaintiff under the dead man statute, Code section 622.4, to testify to delivery.

▮ II. In the second group of assigned errors defendant asserts the rebuttal testimony of all plaintiff's witnesses other than Mrs. Leisner and Mr. Armstrong, above referred to, was

inadmissible mainly as irrelevant, immaterial and not proper rebuttal.

Plaintiff testified in rebuttal she and decedent were married in April 1934; she maintained a savings account from 1923 to 1930 (there was no objection to this); she owned the furniture in three different hotels which was sold for $3000, $6000 and $3500 in 1936, 1943 and 1945, respectively; she received none of the proceeds from these sales; she sold a house in Morningside at a profit of $4750 but did not receive the money; she sold a store at Bronson late in 1946 for $4500; she sold her equity in a farm near Bronson for $8400 (this was in March 1948); she did not receive the proceeds of these two sales; Sam received $2200 from a Sioux City bank about September 15, 1949 (date of the note), on a mortgage of jointly owned property—half of this money was hers; after her marriage plaintiff continued to operate her beauty parlor; when she was married she had about $1500 in a deposit box and $5000 of insurance.

George Kelly testified he bought the furniture in two of the hotels and paid decedent $6000 and $3500 for it; the last three automobiles decedent had were Cadillacs. Harry Johnson said he bought the Bronson store and paid Sam $4500 for it. Fred Tornow testified the Bronson farm was in the names of both Rose and Sam; he purchased it and gave Sam a check for $8400 for it; Sam said two or three weeks later he had the money all spent.

The deputy clerk of the United States District Court in Sioux City testified the records of his office showed Sam Shama was discharged in bankruptcy November 7, 1932, on his voluntary petition.

Plaintiff said Sam was a guest of the United States Government and not present in Sioux City from July 1, 1938, to January 1, 1940. One objection urged to this is it was not the best evidence. Thereupon plaintiff recalled the deputy clerk who testified the records of his office showed Sam Shama was sentenced to the penitentiary for two years and was delivered to the warden June 27, 1938.

The above is a sufficient summary of the rebuttal testimony other than that of Mrs. Leisner and Mr. Armstrong referred

to in Division I hereof. Most of it was received over defendant's objection of incompetent, irrelevant, immaterial and not proper rebuttal..

Plaintiff contends this rebuttal evidence was admissible on the question of genuineness of the signature to the note since it tends to show consideration for it and that the circumstances leading up to the execution of the note make it probable Sam signed it. Defendant's principal contention is the testimony was irrelevant and too remote from the making of the note. He complains especially of admission of the evidence of bank-. ruptcy and confinement in the penitentiary.

Although the above evidence covers a rather wide field and some of it is remote in point of time from the date of the note, we are not persuaded its admission was reversible error. We think the remoteness of some of the testimony goes to the weight that should be given it, not to its admissibility. There seems to be little dispute between the parties as to the law governing receipt of this evidence.

11 C. J. S., Bills and Notes, section 670b, pages 130, 131, says: "Evidence to show a state of affairs which would render it probable or improbable that the instrument was executed by defendant is admissible. * * *.

"The financial condition of the payee or lender at the time of the execution of the note may be shown as a circumstance."

In re Estate of Smith, supra, 244 Iowa 643, 647, 56 N.W.2d 477, 479, states: "There is some assumption that every honest person desires to pay his debts, so evidence of the indebtedness has direct bearing on whether there was delivery of the instrument which, so the jury could find, evidenced the indebtedness." See also In re Estate of Rule, supra, 178 Iowa 184, 197, 198, 159 N.W. 699, 704, cited in the Smith case. Such evidence seems to bear fully as much on whether the note was executed as it does upon the question of delivery, and the authorities so hold.

Donahue v. Wagner, 68 Iowa 358, 360, 27 N.W. 274, 275, holds that upon a defense of forgery of a note "defendant should have been permitted to show all business transactions between the parties to the instrument which in any way tended to affect the question as to whether he made the note; * * *." Of course

such evidence should be admissible when offered by the payee as well as by the maker.

See also Nickerson v. Gould, 82 Maine 512, 515, 20 A. 86, 88, which holds facts may be shown bearing on the probability or improbability defendant signed the note even though remote in point of time, and First National Bank v. Gallinger, 47 N. D. 489, 494, 182 N.W. 695, 696.

There is little doubt the evidence of which defendant complains renders it probable decedent signed the note. Testimony of plaintiff with that of witness Kelly tends to show decedent received of plaintiff's money $6000 in 1943 and $3500 in 1945. Plaintiff and witness Johnson testified in effect Sam received $4500 about December 1, 1946, which should have gone to plaintiff. Plaintiff and witness Tornow said decedent was paid $8400 about March 1948, at least half of which belonged to plaintiff. These four sums alone, without interest, total $18,200. This and other evidence tends to show Sam was indebted to plaintiff well in excess of the amount of the note ($22,000). Eleven hundred dollars of this arose on the date the note bears.

None of the testimony just referred to is too remote. It is not unusual for indebtedness between husband and wife to run a considerable time before it is evidenced by a promissory note. Although some other testimony is more remote we cannot say it does not point to the probability decedent signed the note. It shows plaintiff had a business of her own and was saving her money when she married Sam a little over fifteen years before the date of the note. This condition continued, with plaintiff making successful investments and accumulating property, throughout their married life. Decedent, on the other hand, was insolvent in 1932 and for eighteen months ending January 1, 1940, was unable to earn. On several occasions he received substantial amounts of plaintiff's money which were never paid her from sales of her properties between 1936 and 1949. In a word the evidence shows plaintiff earned and saved her money and Sam spent a good part of it.

Defendant argues evidence of the bankruptcy and the imprisonment was prejudicial to him. But if it was relevant and material it was admissible even though it may have been unfavor-

able to defendant. As previously stated, defendant objected as not the best evidence to plaintiff's testimony that Sam was a guest of the government and not in Sioux City from July 1, 1938, to January 1, 1940. Defendant's counsel seemed to be unwilling to stipulate that decedent was gone from Sioux City this length of time. Plaintiff's attorney apparently offered only as much evidence as he felt was necessary to prove such absence.

It was not reversible error to receive this testimony in rebuttal rather than in chief. Plaintiff's evidence made a prima-facie case. Defendant offered opinion testimony the signature to the note was not genuine. It was not an abuse of discretion to permit plaintiff to offer in rebuttal evidence which rendered it probable decedent signed the note. That the testimony could have been offered in chief did not preclude its admission in rebuttal. Even where evidence does not rebut that offered by a defendant the trial court may, in its discretion, permit its offer in rebuttal. Robson v. Barnett, 241 Iowa 1066, 1070, 1071, 44 N.W.2d 382, 384, and citations.

Defendant does not contend the testimony of Mrs. Leisner and Mr. Armstrong was not proper rebuttal. Although the other evidence above summarized is circumstantial rather than direct we think it relates to the same ultimate issue and was no less receivable in rebuttal than that of Mrs. Leisner and Mr. Armstrong.

III. The jury was instructed in substance that the rebuttal evidence was admitted for the sole purpose of permitting plaintiff to show decedent had funds in his hands belonging to plaintiff at the time the note was executed and bearing on her claim that decedent signed and delivered the note to her. The objection argued here to this instruction is that the rebuttal evidence should not have been received, therefore the instruction was erroneous. Our holding it was not error to receive the testimony in rebuttal disposes of this objection to the instruction (No. 7).

IV. It was not reversible error for the trial court to refuse to reopen the case so defendant could offer in evidence two deeds from plaintiff to decedent dated February 19, 1949, conveying a half interest in certain farm land and realty in

Sioux City. We do not understand either deed covered any property referred to in the rebuttal testimony as having been sold. Both deeds recited title was in plaintiff but in fact she and decedent each owned a half interest.

As defendant concedes, the trial court had a good deal of discretion whether to reopen the case to permit these deeds to be offered and we will not interfere with his ruling unless a clear abuse of discretion appears. See rule 192, Rules of Civil Procedure; Sullivan v. Sullivan, 244 Iowa 838, 844, 56 N.W.2d 910, 913, and citations; Mealey v. Scott, 242 Iowa 787, 792, 793, 48 N.W.2d 262, 264, 265, and citations; 53 Am. Jur., Trial, section 123. No such abuse of discretion appears here.

Defendant's motion to reopen the case was made the third day of the trial—the day after the parties rested and the evidence was closed. Plaintiff's counsel asserted plaintiff's witnesses had been excused. Defendant's attorney knew both deeds had been executed before him as notary public. He frankly admitted, in effect, that before he rested his case he considered the advisability of offering these deeds but "wasn't too sure whether they should go in." Counsel evidently decided after the evidence was closed the deeds should be offered.

When asked to explain the materiality of the deeds defendant's attorney stated in substance they would tend to show the improbability decedent was indebted to plaintiff at the time they were given—she would not be apt to make them if he were owing her anywhere near the amount of the note. The deeds were made about seven months before the note was given. While we may assume, without deciding, the deeds would have been proper surrebuttal it is not clear their receipt in evidence would have materially helped defendant.—Affirmed.

All JUSTICES concur.